STRANGIO et al. v. CONSOLIDATED INDEMNITY & INS. CO.
No. 7013.
Circuit Court of Appeals, Ninth Circuit.
July 24, 1933.

Nutter & Rutherford and A. P. Hayne, all of Stockton, Cal., for appellant Leslie.

Sydney C. Bennett, of Stockton, Cal., for appellant Benschoter.

Warren H. Atherton, of Stockton, Cal., for other appellants.

Glensor, Clewe, Schofield & Van Dine, of San Francisco, Cal., for appellee.

Before WILBUR, SAWTELLE, and MACK, Circuit Judges.

SAWTELLE, Circuit Judge.

This is an appeal from a decree canceling a policy of public liability insurance issued by the appellee upon an automobile owned by the appellants Fred and Tom Strangio.

The application for the policy of insurance was made by Tom Strangio to Emile L. Matthias, in Stockton, Cal., where they resided, on the morning of Saturday, October 18, 1930. At that time Strangio asked Matthias to procure public liability insurance on three certain automobiles, including the Studebaker automobile here involved. Matthias was then a clerk for the Southern Pacific Company, and for four or five years previously "had been sending applications to the Netherlands [Insurance Company] for insurance." The Netherlands had its office in San Francisco. Matthias was not licensed to act as an insurance agent in October, 1930; his license, according to his testimony, having expired in June of that year. A deputy insurance commissioner testified that Matthias "was not licensed as a broker during 1930 and 1931 and was not licensed for the complainant [the appellee] corporation during 1930 and 1931." Matthias had previously placed insurance on the car in question, through the Netherlands Company, the same having expired in the spring or early summer of 1930.

Matthias mailed a "daily report" covering the insurance requested by Strangio to the Netherlands Company on the following morning, Sunday, October 19. This report requested that the date of the policy be fixed to commence as of noon, October 18, 1930. An application sent in by the Netherlands on one of the appellee's forms contained the same stipulation.

About 2:30 o'clock on the afternoon of Sunday, October 19, 1930, the Studebaker car for which the insurance was requested, while being driven in Stockton by John Strangio, with the consent of Tom Strangio, collided with a machine operated by James C. Benschoter, injuring Benschoter and damag-

ing his car, and injuring Harold Leslie, a passenger in Benschoter's car.

Benschoter and Leslie recovered judgments against the Strangios in the state court for the injuries received in the accident. Their judgments remaining unsatisfied, they were granted leave to intervene in this suit, and have joined the Strangios in this appeal.

Matthias was notified of the collision with Benschoter's car on the same afternoon, about 3:30 o'clock, Sunday, October 19, by Tom Strangio. On the morning of October 21, 1930, Matthias mailed a letter to the Netherlands Insurance Company reporting the accident, and the letter was received at the Netherlands office on October 22.

Meantime, on the morning of Monday, October 20, the Netherlands Company received the application for insurance on the Strangio cars from Matthias. Since the Netherlands Company did not write public liability insurance, it telephoned to the appellee and requested the latter to issue the policies of insurance. Appellee did so on October 21, specifying a period beginning at 12:01 a. m., October 18, as requested in the application.

Upon learning that the car covered had been involved in an accident on October 19, the appellee gave notice of cancellation of the policy of insurance thereon, and commenced and successfully prosecuted a suit in equity to rescind and cancel the insurance.

The appellee's complaint alleged that the appellants Strangio concealed the fact of the accident from the appellee, and that "had said defendants communicated said facts to complainant at any time before the issuance of said policy, the complainant would not have issued said policy."

The answer denied the complaint's allegations of "fraud, deceit and concealment."

The lower court entered a decree declaring the policy to have been "procured by fraud and concealment," and adjudging it to be null and void.

It appears that the Netherlands Company did not write public liability insurance, but the appellee company did, and there was an agreement between the two companies that public liability insurance applications received by the Netherlands Company would, if acceptable to the appellee, be turned over to, and written by, the appellee. With reference to this agreement, Mr. Gorham, the superintendent of the Netherlands Company, testified that in April or May of 1930 he had a conversation with Mr. Deasy, the manager of the appellee company; that "the purpose of the conversation was to place the public liability insurance which my company cannot write, and which was given to us by our agents or brokers. I asked Mr. Deasy if the Consolidated Indemnity and Insurance Company would be open for such business as we might offer them. I told him that the business was public liability insurance where the assured would want public liability, property damage, fire, theft and collision insurance on automobiles. I said we would write the fire, theft and collision and that the property damage and liability would be placed with them, if acceptable, and that we would phone them as it came to our office. He agreed to the proposition. I did not ask him to act as broker for his company or agent for the company. I just asked him if he would take the business we offered. We agreed my company would get the regular broker's commission.

"Afterwards the manager of my company approved of the arrangement and policies were placed with the Netherlands Insurance Company under this arrangement, they paying us a commission on the premium. We always phoned this business to the Consolidated Indemnity and Insurance Company and they would send us the policy if acceptable to them, after which we would mail it to our broker or agent. * * * I do not recall that the Consolidated ever rejected any such insurance that we applied to them for over the telephone, but they did reject them later."

Mr. Deasy, of the appellee company, testified: "We talked about the matter—talked about it from the standpoint of underwriting and from the standpoint of remuneration—what it would pay the Netherlands Insurance Company as brokers on such business, and I indicated to Mr. Gorham that I was interested in such business but that it must be underwritten and entirely controlled by our own office and that we would have to have the full direction and control of our underwriters. Mr. Gorham said that that was acceptable to his company and that he was only interested in the service which my company could give his company. We then spoke of the brokerage remuneration to be paid them and when that was agreed to the arrangement went into effect. In the course of this conversation I told Mr. Gorham that it was impossible to allow the Netherlands Insurance Company to issue cover notes in our behalf. After this conversation the arrangement went into effect. The Netherlands Insurance Company offered us insurance from time to time and

we generally accepted it, though some was rejected after investigation."

Appellants contend that the Netherlands Company was an agent of the appellee company, with power to bind it, and that the knowledge of Matthias, the agent of the Netherlands Company, was the knowledge of the Netherlands Company, and therefore the knowledge of the appellee company; hence Matthias having knowledge of the accident prior to the issuance of the policy, his knowledge was the knowledge of the appellee, and there was therefore no concealment.

The appellee, on the other hand, contends that "the arrangement with the Netherlands Insurance Company was a mere brokerage arrangement. It in no sense constituted the Netherlands Insurance Company an agent of appellee to any extent or for any purpose whatsoever."

The present controversy turns upon two questions:

(1) Were the appellants Strangio under a duty to disclose to the appellee the fact that there had been an accident, before the policy was issued?

(2) Was the disclosure to Matthias equivalent, in law, to a disclosure to the appellee? Or, in other words, was Matthias the agent of the appellee?

As to the first proposition, the appellants contend the fixing of the policy period as commencing on October 18, 1930, was an assumption of risk on the part of the appellee for all accidents between that date and October 20, 1930, when the policy was executed; and that there was therefore no duty on the part of the insured to communicate the fact of an accident occurring between those dates.

The Civil Code of California contains several provisions dealing with the subject of concealment and the duty to disclose, which are applicable to the problem before us. Those sections are as follows:

"2561. A neglect to communicate that which a party knows, and ought to communicate, is called a concealment.

"2562. A concealment, whether intentional or unintentional, entitles the injured party to rescind a contract of insurance.

"2563. Each party to a contract of insurance must communicate to the other, in good faith, all facts within his knowledge which are or which he believes to be material to the contract, and which the other has not the means of ascertaining, and as to which he makes no warranty.

"2565. Materiality is to be determined not by the event, but solely by the probable and reasonable influence of the facts upon the party to whom the communication is due, in forming his estimate of the disadvantages of the proposed contract, or in making his inquiries."

In Stipcich v. Met. Life Insurance Co., 277 U. S. 311, 316-318, 48 S. Ct. 512, 513, 72 L. Ed. 895, Mr. Justice Stone said:

"Insurance policies are traditionally contracts uberrimæ fidei and a failure by the insured to disclose conditions affecting the risk, of which he is aware, makes the contract voidable at the insurer's option. [Cases cited.] * * *

"But the reason for the rule still remains, and with added force, as to changes materially affecting the risk which come to the knowledge of the insured after the application and before delivery of the policy. For even the most unsophisticated person must know that, in answering the questionnaire and submitting it to the insurer, he is furnishing the data on the basis of which the company will decide whether, by issuing a policy, it wishes to insure him.

"If, while the company deliberates, he discovers facts which make portions of his application no longer true, the most elementary spirit of fair dealing would seem to require him to make a full disclosure. If he fails to do so the company may, despite its acceptance of the application, decline to issue a policy, Canning v. Farquhar, 16 Q. B. D. 727; McKenzie v. Northwestern Mutual Life Insurance Co., 26 Ga. App. 225, 105 S. E. 720; or if a policy has been issued, it has a valid defense to a suit upon it, Equitable Life Assurance Soc. v. McElroy (C. C. A.) 83 F. 631, 636, 637. Compare Traill v. Baring, 4 DeG. J. & S. 318; Allis-Chalmers Co. v. Fidelity & Deposit Co. of Maryland, 114 L. T. 433. Compare Piedmont & Arlington Life Insurance Co. v. Ewing, 92 U. S. 377, 23 L. Ed. 610."

In Springfield Fire & Marine Ins. Co. v. National Fire Ins. Co. (C. C. A. 8) 51 F. (2d) 714, 719, 76 A. L. R. 1287, the court said: "However, in the case of marine insurance policies 'lost or not lost,' and in the case of fire insurance policies where the period of risk antedates the making of the contract, there is the implied condition that the party insured does not know at the time of procuring the policy that the property insured has already been destroyed. [Cases cited.]"

In the instant case, it cannot be said that the insurance was "procured" before the

accident. Merely making an oral application to Matthias did not "procure" the insurance for the Strangios. Matthias, as we shall see more fully hereafter, had no power to bind either the appellee or the Netherlands Company. There was no oral contract of insurance. The only contract that arose came into existence when the appellee issued the policy; and, since the policy was issued after the loss, the duty to disclose remained with the appellants.

We see no reason why the rule referred to in the Springfield Case (C. C. A.) 51 F.(2d) 714, 76 A. L. R. 1287, supra, should not be applied in cases of public liability insurance involving automobiles. Like a vessel at sea, an automobile may easily be involved in an accident without the knowledge of the owner. As to such accident, unknown to him, there would be no duty on the owner's part to disclose, during the pendency of the negotiations.

One of the important elements in the problem is whether or not a contract of insurance has been consummated—regardless of the issuance of the policy at the time of the accident. If the contract has been consummated, the better rule is that, the insurer's liability having already attached, there is no duty to disclose on the part of the insured.

Emphasis on the point that there may be an insurance contract independently of the writing which evidences it was laid by the Supreme Court in Mut. Ben. Life Insurance Co. v. Higginbotham, 95 U. S. 380, 386, 387, 24 L. Ed. 499:

"If we assume it to be true, as a general proposition, that the policy speaks from the date of its issue, and that the obligation of the applicant to make a full disclosure continues down to the completion of the contract, and that the occurrence of a material change before the contract is consummated must be communicated to the company, we do not advance essentially in the case before us. The question recurs, When was the contract of Dr. Day consummated? If on the 14th of October, when the renewal receipt was delivered, as the company contends, then the rule mentioned bars the plaintiff's right to recover. If, as the plaintiff contends, the contract, by the intention and understanding of the parties, relates to the 1st of October, when the premium was paid by the applicant and the certificates of health presented and transmitted, or to a point of time within a few days thereafter, within which the company ought to have examined and to have accepted a risk in all respects suitable to be accepted within its own rules, then the general rule quoted is not applicable. The case is governed by different principles. It is not necessary, therefore, to question the principle assumed in the authority quoted, or to examine the cases cited to sustain it.

"We are of the opinion that the exceptions to the charge of the judge, upon the theory that the representations by Dr. Day were made on the fourteenth day of October, or that concealment was then practised by him, on the ground that the previous representations, necessarily and as a matter of law, were continuous, and that the contract was consummated on that day, cannot be sustained."

The importance of the existence of a contract of insurance as affecting the duty to disclose a fact material to the risk, was suggested by the Supreme Court in the Stipcich Case, supra, at page 316 of 277 U. S., 48 S. Ct. 512, 513, 72 L. Ed. 895: "But there is no contention here that the parties contracted exclusively on the basis of conditions at the time of the application. Here both by the terms of the application and familiar rules governing the formation of contracts no contract came into existence until the delivery of the policy, and at that time the insured had learned of conditions gravely affecting his health, unknown at the time of making his application."

We advance next to the question of Matthias' power to bind the appellee with his seasonable knowledge of the accident, either directly or through the Netherlands Company. If Matthias was the agent of the appellee, his knowledge of the accident, imparted by Tom Strangio, bound the appellee; otherwise not.

The Political Code of California furnishes us with the definition of "agent" and "broker," as follows:

Section 633 (as amended by St. 1923, p. 731): " * * * Any person duly appointed and authorized by an insurance or surety company, or other insurer to solicit applications for insurance or surety bonds, or effect insurance or surety bonds in the name of such company or other insurer shall be an agent within the meaning of this section."

Section 633a (as amended by St. 1923, p. 738): " * * * *Who Are Insurance Brokers.* Any person, firm or corporation, other than an insurance or surety company or society, or other insurer, or agent of such company or society or other insurer, or employee compensated by salary only and acting on behalf of such company or society or other insurer, or

agent, or a medical examiner for a life insurance company or society, who for compensation acts or aids in any manner in negotiating contracts of insurance or surety bonds or reinsurance or placing risks, or effecting insurance or reinsurance for a party other than himself or itself, shall be an insurance broker within the meaning of this section."

■ According to the testimony of Matthias, which was uncontradicted, he had been "sending applications" for insurance to the Netherlands, in the forms of "daily reports," since it was not the practice of the company to receive signed applications. It is clear that he had no authority to effect a contract of insurance, and that, as to the liability insurance in the instant case, the contract was executed by the appellee itself. Before receiving the policy in the instant case, Matthias had not even heard of the appellee.

Under such a state of facts, and in the light of the statutes just quoted, we cannot regard Matthias as the agent either of the Netherlands Company or of the appellee.

There is nothing in the evidence to support the conclusion that the Netherlands Company was the agent of the appellee; just the contrary is apparent. The testimony above quoted clearly shows that the appellee did not accept any and all business offered to it by the Netherlands Company, but accepted such business subject to rejection upon investigation of the risk. Mr. Gorham, of the Netherlands Company, testified: "I did not ask him [Mr. Deasy] to act as broker for his company or agent for the company. I just asked him if he would take the business we offered." And Mr. Deasy, of the appellee company, testified: "I indicated to Mr. Gorham that I was interested in such business but that it must be underwritten and entirely controlled by our own office and that we would have to have the full direction and control of our underwriters. Mr. Gorham said that that was acceptable to his company and that he was only interested in the service which my company could give his company." "In the course of this conversation I told Mr. Gorham that it was impossible to allow the Netherlands Insurance Company to issue cover notes in our behalf."

■ There is nothing in the record to support a finding that Matthias was an ostensible agent of appellee. The Strangios did not know what company Matthias represented, and Matthias had never had any dealings with appellee, and did not know that the insurance would be written by appellee. There-

fore appellee was not estopped to attack the validity of the contract.

It is not contended that, assuming that the appellants had the duty to disclose the fact of the accident to the company itself, the concealment complained of was insufficient to vitiate the policy.

■ Nor can it be said that the issuance of the policy by appellee as of October 18 constituted a ratification of Matthias' attempt to make the contract effective as of that date. The policy was issued by appellee without any knowledge of the facts constituting the concealment, and there was no duty on its part to make any inquiry concerning the possibility of such a circumstance. Appellee had not at any time authorized Matthias to act as its agent, and Matthias did not know with what company the insurance would be placed. Hence there is lacking the element of knowledge which is essential to an application of the doctrine of ratification.

Under the statutes quoted above, Matthias was the agent neither of the Netherlands Company nor of the appellee or any other insurer, at least in so far as public liability insurance was concerned. He was simply an insurance broker.

■ And, being a broker, he was, under the general law, the agent, not of the insurance company, but of the insured.

In 32 C. J. 1054, the rule is thus stated: "An insurance broker, like other brokers, is primarily the agent of the person who first employs him, and therefore, an insurance broker or agent employed to procure insurance for another, ordinarily is not the agent of the company, and owes no duty to it; but is the agent of the insured as to all matters within the scope of his employment, and acts or knowledge of such broker or agent will be binding on or imputed to insured and not to the company. In the absence of statute such broker or agent is the agent of insured, even though he solicits the insurance, or the policy is delivered to him, and he collects the premium as agent of the company; and even though he receives his compensation from the company or its agent."

Similarly, in 22 Cyc. 1427, it is said: "An insurance broker is ordinarily the agent of the person seeking insurance."

Again, in Cooley's Briefs on Insurance (2d Ed.) vol. 5, pp. 4065, 4066, we find the following language: "Generally, the question as to whether a person through whose aid a policy is procured is the agent of the insurer or the insured is raised with reference to in-

surance brokers. By the weight of authority, a broker who merely solicits applications, and afterwards places the insurance with such companies as he can induce to take the risk, is regarded as the agent of the insured, and hence the insurer is not charged with knowledge of matters contrary to the provisions of the policy of which the broker has notice, but which he does not communicate to the insurer or its authorized agent."

See, also, Overland Sales Co. v. American Indemnity Co. (Tex. Civ. App.) 256 S. W. 980, 982; Pringle v. Ætna Life Ins. Co., 123 Mo. App. 710, 101 S. W. 130, 131.

As broker, Matthias could not bind the appellee by his knowledge of the accident: "Conceding that notice to a duly authorized agent of the insurer would be sufficient notice to one who is the agent of the insured, or whose only relation to the insurer is that of broker, is not notice to the insurer." Cooley, supra, vol. 7, p. 6083.

The policy covers only liabilities that were unknown to Strangio Bros. at the time the application for insurance was accepted and the policy was issued. If an accident had occurred between the date that Strangio Bros. applied for the insurance and the date of the issuance of the policy, without the knowledge of Strangio Bros., the policy having been made effective prior to the accident, the policy would have taken effect by relation as of the 18th. Under the California statute, quoted above, the failure to disclose to the insurer that an accident had happened authorized the cancellation of the policy, notwithstanding the fact that Strangio Bros. were not guilty of any intentional wrong in not making the disclosure to the insurance company before the policy was issued.

This case is not governed by the law which makes the insurer liable where the local agent was authorized to and did make an oral contract of insurance. Here, as we have seen, Matthias was a mere broker of the insured, and in no sense the agent of the insurer. The application was of no effect whatever until accepted by the insurer. Had an accident occurred and liability attached between the date of the application and the issuance of the policy, of which Strangio Bros. had no knowledge or notice, then the effect of fixing the effective date of the policy as of October 18 would have been to make the insurer liable for any such "unknown" accident or liability.

We have assumed that Matthias was the broker of the Netherlands Company and was acting lawfully on behalf of that company, although there is some question as to his power or right to do so, in view of the fact that he was unlicensed to so act. However, in view of our conclusion, that question need not be determined.

We have considered the assignments of error dealing with other questions. Under the view that we take of the case, such assignments are without merit. Furthermore, "since the rulings of the lower court upon the admissibility of evidence in an equity suit are in no way binding upon us and if wrong do not constitute reversible error * * * it is unnecessary to discuss the assignments of error based upon them." Johnson v. Umsted (C. C. A. 8) 64 F.(2d) 316, 318; Unkle v. Wills (C. C. A. 8) 281 F. 29, 34.

For the foregoing reasons, we are of the opinion that the decree of the lower court should be affirmed.

Decree affirmed.