ARDELL WAINWRIGHT, APPELLEE, V. WASHINGTON NATIONAL INSURANCE COMPANY, APPELLANT.

6 N. W. (2d) 368

FILED NOVEMBER 20, 1942. No. 31457.

*Ellick, Fitzgerald & Smith* and *R. B. Hamer*, for appellant.

*H. J. Pinkett* and *W. B. Bryant, contra.*

Heard before SIMMONS, C. J., ROSE, EBERLY, PAINE, CARTER, MESSMORE and YEAGER, JJ.

CARTER, J.

This is an action on an industrial life insurance policy to recover death benefits alleged to be due. The trial court entered judgment for the plaintiff and the defendant appeals.

On February 6, 1939, the defendant insurance company issued and delivered a policy of life insurance upon the life of Allison Frederick in the amount of $308 payable to plaintiff, the mother of the insured, as the designated beneficiary. The insured died on September 8, 1940, and proof of death was duly made. Plaintiff alleges in her petition that all conditions precedent to liability were complied with and prays for judgment in the full amount.

The defendant alleged and the evidence shows that the insurance policy lapsed on or about March 18, 1940, because of a default in the payment of premiums. On April 13, 1940, the insured applied for reinstatement of the policy. Defendant alleges that the insured, in order to obtain reinstatement, falsely and fraudulently warranted and represented in the application for reinstatement that he was in sound health and free from the effects of any injury, that he did not then have any physical or mental defect or infirmity and that he had not had any illness or accident during a period of three years preceding, except a disability of ten days' duration resulting from a sprained back from which he had fully recovered. The defendant alleges that it relied upon the warranties and representations made and on April 22, 1940, reinstated the policy, not knowing that said statements were false and fraudulent.

The application for reinstatement which the insured

signed appears in the record. In the application, insured was asked the following questions to which he gave the respective answers shown: "Are you now in sound health and free from the effect of any injury? Yes. When were you last sick or disabled from accident? March 15, 1940. Describe disease or injury. Fell against a stove in basement." Then follows this statement over the signature of the insured: "The undersigned hereby represents and declares that the person upon whose life the above described insurance was issued has not been sick or afflicted with any disease or injury, or consulted any doctor or surgeon since said policies were lapsed except as noted above, and agrees that no liability shall exist on the part of the Company unless and until said Company shall have approved this application at its Home Office in Chicago, Illinois." On the back of the application is the report of the medical examiner, including some questions which were answered by the insured over his signature. Immediately above insured's signature appears the following: "I hereby declare that the statements recorded above and on the reverse side hereof are true and complete. If the Company shall revive the policies described on the reverse side hereof, I agree that such revival shall be deemed to be based upon the statements contained in this application and upon the condition that if any of said statements be untrue, that the Company shall be under no liability for a period of two years from the date of such revival except to return premiums paid since date of revival."

The medical report shows that the insured was examined by a physician who answered the questions on the form report as follows: "Does life proposed appear to be in sound health and free from injury? Yes. Is the heart diseased? No. Are the lungs diseased? No. Do you detect disease of any kind? No." The evidence further shows that in connection with the making of the foregoing answers the physician made a cursory examination of the insured in his home by personal observation and by the use of a stethoscope.

The record conclusively shows that the insured was, at

the time he applied for reinstatement and long prior thereto, afflicted with pulmonary tuberculosis and epilepsy. He had been advised of his condition by physicians and had on September 8, 1939, entered the Douglas County Hospital for treatment for tuberculosis. Upon entering the hospital the insured had informed hospital attendants and the physician in charge that he had previously suffered from tuberculosis. On June 4, 1940, insured again entered the hospital where he remained until his death on September 8, 1940, from pulmonary tuberculosis and tubercular meningitis. The record shows without question that the insured had been afflicted with tuberculosis since April or May, 1939, and that he had been informed and was fully aware of his condition.

The insured, in order to obtain reinstatement, warranted that the statements he had made in the application relative to his health were true and that, if they were not true, liability would be limited to a return of premiums paid. The record shows that the questions were not truthfully answered and that because of such false answers the insurance company was induced to reinstate the insured at a time when he was afflicted with a fatal disease. There is ample evidence in the record that the reinstatement would not have been made had the true situation been stated by the insured. The breach of warranty of good health and the fraud thus shown upon which the insurer relied bar a recovery under the policy for any amount other than the premiums paid. *Wolski v. National Life & Accident Ins. Co.*, 135 Neb. 643, 283 N. W. 381.

Plaintiff urges that the insurance company was bound by the findings of its medical examiner. In this connection the officer of the company, whose duty it was to pass upon the application for reinstatement, testified that in approving the application sole reliance was had upon the answers given by the insured. This witness testifies that the medical report referred to does not constitute a physical examination, but is a report based upon a visual, superficial inspection for which the physician is paid a nominal fee. The purpose of the medical report is described as a check upon the com-

pany's agent, the securing of applicant's signature by more than one person and the discovery of any noticeable disability affecting the risk. We do not think the defendant is bound to rely upon such a report under the circumstances shown.

The mere fact that an insurer makes an investigation of its own relative to the insurability of the applicant does not absolve the applicant from speaking the truth, nor lessen the right of the insurer to rely upon his own statements as to his physical condition. *Reliance Life Ins. Co. v. Sneed,* 217 Ala. 669, 117 So. 307. If truthful answers had been given by the insured, an examination of the diseased parts of applicant's body could have been made and the insurance company could then have acted with full knowledge of the facts. But the evidence is clear that the applicant deceived the physician and caused him to rely upon an appearance of good health which did not in fact exist. Clearly, the applicant's beneficiary cannot now rely upon a physician's finding of good health, procured by the deception and fraud of the applicant, to overcome the effect of applicant's falsification of the facts concerning the condition of his health contained in his application for reinstatement. It is common knowledge that insurance companies insure the well and not the sick, and where one afflicted with a serious disease obtains insurance by his own deceit and fraud it avoids the insurance contract the same as any other agreement.

The trial court erred in failing to sustain defendant's motion for a directed verdict at the close of all the evidence.

REVERSED AND DISMISSED.