MFA MUTUAL INSURANCE COMPANY, APPELLANT, v. JERRY A. MEISINGER ET AL., APPELLEES.

159 N. W. 2d 829

Filed June 21, 1968. No. 36815.

Gross, Welch, Vinardi, Kauffman, Schatz & Day, for appellant.

Lathrop & Albracht and Kneifl, Kneifl & Byrne, for appellees.

Heard before, WHITE, C. J., CARTER, SPENCER, BOSLAUGH, SMITH, McCOWN, and NEWTON, JJ.

SMITH, J.

Plaintiff insurance company sued Jerry A. Meisinger and others for a declaration of nonliability on an automobile policy issued by plaintiff to Meisinger. Plaintiff claimed power to avoid the contract on the ground of misrepresentation of accidents and traffic violations in the application for the policy. After a trial the district court dismissed the action, and plaintiff has appealed.

Meisinger applied for the policy on July 17, 1966. Plaintiff's agent filled out the application which comprised two pages, one on each side of a sheet of paper. Meisinger signed it in the space specified, and he did so immediately below this statement set in boldface print: "I hereby make application * * * on the basis of the statements and answers to questions made above and I represent that such statements and answers to questions are true." The information appearing on that page was correct. It disclosed: (1) birth date, January 16, 1946; (2) occupation, laborer; (3) use of alcoholic beverages; (4) ownership of a 1960 Oldsmobile mortgaged to Murphy Finance Co. for $500; (5) previous insurer, "Dairyland Mutual"; (6) no insurance policy under the assigned

risk·plan; and (7) no cancellation or other refusal of a policy·in the past 5 years.

The page with Meisinger's signature also included the following instructions, questions, and answers: "(If answer to question 6, 7, 8, 14 or 15 is 'yes'—explain fully on back) * * * 6. Has any driver, in the past 5 years: * * * (b) Had any auto accidents? Yes. 7. Has any driver EVER been arrested for any offense or convicted in any court? Yes. * * * 14. During the past 5 years has the applicant * * * been convicted of a moving traffic violation or had any license or permit to drive or the registration of any automobile suspended, revoked or refused? Yes."

In the space provided on the other page for full information concerning answers 6(b), 7, and 14, the disclosure was incomplete. The agent wrote: "6-b- Jerry had a blowout and struck a stop sign 1966"; "7- Jerry received a ticket for # 6-b. 1 speeding ticket 1965;" "14- same as # 6b & 7." Meisinger testified to a conversation with the agent about other offenses as follows: "I said, '* * * I have had minor things that didn't amount, you know, to any great damage,' and that was then understood that it wasn't important." His testimony was contradicted by the agent and her husband.

Meisinger's record kept by the Director of Motor Vehicles disclosed 5 accidents and 5 traffic violations between February 1962 and June 7, 1966. Four of the violations had occurred subsequent to November 17, 1965, and regarding them the director had recorded "Traffic Sign," "Negligent Drive," "Speeding," and "Stop· Sign." On June 17, 1966, he suspended Meisinger's license for failure to report a minor property damage accident. He removed that ground of suspension on July 20. Meanwhile, on July 14, he had revoked the license because Meisinger had accumulated 8 points from the 4 violations. Meisinger was not notified of the revocation until July 21, 4 days after his application but approximately a week before delivery of the policy.

There is general testimony that plaintiff did not issue policies to applicants with records of more than 3 accidents, violations, or both in the preceding 5 years. When plaintiff's underwriter Steinmets examined Meisinger's application, he considered the following data: (1) Meisinger was a laborer 20 years of age. (2) The Oldsmobile was mortgaged. (3) Throughout the insurance industry Dairyland Mutual was known as an insurer of substandard risks. (4) Meisinger had a record of one accident and two violations in 1965-66, but none in 1961-64. Steinmets probably knew that he might obtain the record from the Department of Motor Vehicles. The statute reads in part: "The department shall, upon request of any applicant, furnish a certified abstract of the operating record of any person and shall be entitled to charge such applicant a fee of seventy-five cents therefor." § 60-412, R. S. Supp., 1967.

The disclosure allerted Steinmets, and plaintiff by order form hired Retail Credit Company to investigate Meisinger and his wife. No copy of the message was kept. According to Steinmets, it specifically requested information about Meisinger's driving habits. The report by Retail Credit Company indicated, however, no examination of "Police/Traffic Rec." and no "MVR" requested by plaintiff. It disclosed a direct interview only with Meisinger's wife and no accidents or traffic violations. The investigator commented, "Both drivers are considered safe and capable drivers."

While Meisinger was operating the Oldsmobile on October 1, 1966, and during the period of license revocation, he struck and killed a boy. Plaintiff was immediately informed. Regarding the accident the Director of Motor Vehicles on January 3, 1967, mailed Meisinger a letter of clearance under the Safety Responsibility Act. The clearance was rescinded on March 8, because liability coverage, according to plaintiff, had not been afforded. No payment of a claim under the policy was shown.

Section 44-358, R. R. S. 1943, reads in part: "No * * * misrepresentation * * * made in the negotiation for a * * * policy of insurance by the insured * * * shall be deemed material or defeat or avoid the policy, or prevent its attaching, unless such misrepresentation * * * deceived the company to its injury."

An applicant's misrepresentation may induce an insurer to issue a policy, although the insurer made an independent investigation. See Wainwright v. Washington Nat. Ins. Co., 142 Neb. 372, 6 N. W. 2d 368. The investigation may still be evidence that the insurer did not rely on the misrepresentation. "Where one to whom false statements are made attempts to verify them and form a judgment upon the facts he discovers, this is evidence that the false statements were not relied upon; but the evidence is not conclusive, since the statements may have been given material weight. Again, the falsity of statements may be so obvious as to render it doubtful or even impossible that action can have been based on them." Restatement, Contracts, § 476, Comment d, p. 910. See, also, 5 Williston on Contracts (Rev. Ed.), § 1515, p. 4226.

The paramount purpose of plaintiff's hiring Retail Credit Company should be obvious. It is obscure. Steinmets remembered that he had specifically requested information about Meisinger's driving habits, plaintiff having destroyed its copy of the order. The report of investigation indicated no accidents or traffic violations, no examination of "Police/Traffic Rec.," and no customer request for "MVR". Steinmets may have mistakenly relied on this expectation: Should the statement in the application turn out to be untrue, equity would grant rescission. We note the possibility only to emphasize the absence of any satisfactory explanation.

The record fails to persuade us that plaintiff in fact relied on the incomplete statement in the application. The judgment is affirmed.

AFFIRMED.

CARTER, J., dissenting.

Defendant Meisinger made a written application for a policy of automobile insurance on July 17, 1966. The policy was issued to him July 25, 1966. On July 21, 1966, Meisinger received notice from the state that his license to operate a motor vehicle on the public highways was revoked. He failed to inform the insurance company of this fact before or at the time of the issuance of the policy.

It is contended in appellant's brief, and supporting authorities are cited, holding that a duty rests upon an applicant to inform the insurance company of facts discovered between the date of application and the date of issuance of the policy which materially affect the acceptance of the risk. Carroll v. Preferred Risk Ins. Co., 60 Ill. App. 2d 170, 208 N. E. 2d 836; Stipcich v. Metropolitan Life Ins. Co., 277 U. S. 311, 48 S. Ct. 512, 72 L. Ed. 895; Millar v. New Amsterdam Casualty Co., 248 App. Div. 272, 289 N. Y. S. 599; Strangio v. Consolidated Indemnity & Ins. Co., 66 F. 2d 330.

In my opinion, the failure of Meisinger to inform the insurance company of the pertinent fact that his driver's license had been revoked, under the circumstances shown, has the effect of voiding the policy. In any event, the issue is raised and should be determined by the court's opinion.