OMAHA NATIONAL BANK, TRUSTEE FOR RAYMOND C. CUTCHALL, APPELLANT, v. THE MANUFACTURERS LIFE INSURANCE COMPANY, APPELLEE.

332 N.W.2d 196

Filed April 1, 1983. No. 82-130.

John F. Thomas and William F. Hargens of Mc-Grath, North, O'Malley & Kratz, P.C., for appellant.

Raymond M. Crossman, Jr., of Crossman & Norris, for appellee.

BOSLAUGH, MCCOWN, and HASTINGS, JJ., and BRODKEY, J., Retired, and RIST, D.J.

BOSLAUGH, J.

The plaintiff bank as trustee is the primary beneficiary of a life insurance policy issued to Raymond C. Cutchall, the insured, by the defendant insurer on March 23, 1976. Cutchall died on August 13, 1977, during the contestable period of the policy. This action was brought on December 10, 1979, to recover the proceeds of the policy.

It is undisputed that the premiums due under the policy were paid and the only issue is whether the defendant was entitled to rescission because of false representations made by the insured in the application for the policy. The premiums paid by the insured, together with interest, were paid into court by the defendant on January 15, 1980.

The record shows that on October 5, 1972, the insured consulted Dr. Thomas J. Gurnett concerning pain underneath his breastbone, which radiated into his shoulders and upper arms. Dr. Gurnett ex-

amined the insured and made a number of tests, including an electrocardiogram (EKG). The EKG showed evidence of a prior coronary thrombosis or myocardial infarction. Dr. Gurnett told the insured that he had experienced a heart attack, and prescribed nitroglycerin as a short-term vasodilator and also longer term and more persistent dilatation medicine. Dr. Gurnett advised the insured that his heart disease would be an ongoing problem.

In October 1975 the insured submitted an application for additional life insurance to The Guardian Life Insurance Company. Guardian offered to issue a policy to the insured at an increased premium because of evidence that the insured had high blood pressure. The insured then submitted applications to Business Men's Assurance Company and the defendant.

While the application to Business Men's Assurance Company was pending, the application to the defendant was accepted and the policy was then issued to the insured by the defendant.

The jury returned a verdict for the defendant, and judgment was entered on the verdict. The plaintiff has appealed. The principal issue on the appeal involves justifiable reliance, that is, whether the defendant was entitled to rely upon the statements made by the insured in the application for the policy. The plaintiff contends the evidence does not support the verdict and that certain of the instructions to the jury were erroneous. The plaintiff also contends the trial court erred in permitting the defendant to offer portions of a deposition and in refusing to allow the plaintiff to offer portions of another deposition.

In determining whether the evidence is sufficient to support the verdict, the evidence must be viewed in the light most favorable to the defendant, all questions of fact must be resolved in its favor, and it is entitled to the benefit of every inference that may reasonably be deduced from the evidence.

It is undisputed that the application submitted to

the defendant by the insured on February 4, 1976, contained the following questions and answers: "SO FAR AS YOU KNOW HAVE YOU EVER HAD ANY DISTURBANCE OF: . . . 4. The HEART, BLOOD VESSELS such as- (c) Chest discomfort, angina or heart disease?" "No"; . . . "(e) Have you had any electrocardiograms, when, why, result?" "Yes"; "4E)- 4-16-75 - Routine phys. WNL."; "4E)1-14-76 - Ins. physical." . . . "12. So far as you know have you had any illness or injury in the last 5 years not mentioned above?" "No." . . . "14. (a) Have you had any operation, treatment, hospital care or medical examination during the last 5 years not mentioned above?" "No."

The statements made on the application which were material to the risk were clearly false. The insured concealed the fact that the EKG by Dr. Gurnett in 1972 disclosed a prior heart attack and coronary artery disease, for which he had received medication.

The evidence is that the defendant relied upon the false statements in the application. If the defendant had known the truth concerning the heart disease of the insured, it would have requested additional information and would not have issued the policy or would have offered a policy at a much higher premium.

The insured died on August 13, 1977, of cardiac arrest as a consequence of an acute myocardial infarction.

The plaintiff contends that the defendant's failure to properly investigate the information available to it precluded justifiable reliance upon the false statements made by the insured.

In addition to the application submitted by the insured, the defendant required that a "heart chart" be completed by a local physician, including an EKG which was made on January 14, 1976. The examination was made by Dr. David Jasper, the personal physician of insured, and the chart was com-

pleted by him. The insured did not consult Dr. Gurnett after February 23, 1973, and did not advise Dr. Jasper of Dr. Gurnett's diagnosis and treatment for his previous difficulty.

The insured reported a negative history of heart disease on the chart submitted to the defendant. In a letter to the defendant dated February 27, 1976, Dr. Jasper stated that the insured was in "excellent health" except for a brief occurrence of high blood pressure.

The application submitted by the insured, together with the other medical evidence submitted to the defendant, was reviewed by Dr. Paul Aggett, a cardiovascular and peripherovascular surgeon, who is the associate medical director for the defendant. Dr. Aggett testified that he relied on the answers to the health questions in the application, and the heart chart submitted by Dr. Jasper. He interpreted the January 14, 1976, EKG supplied by Dr. Jasper as being "within normal limits."

Much of the evidence concerns the interpretation of the January 14, 1976, EKG. Several cardiologists called as expert witnesses by the plaintiff testified that the EKG was "abnormal" and indicated a prior myocardial infarction. These witnesses varied in their testimony as to how positive or apparent the abnormality was shown, and all conceded that the interpretation of an EKG is a matter of opinion about which experts may differ. The evidence further shows that it is possible for a person to have a normal EKG although having suffered a prior heart attack. The evidence also shows that an EKG may be influenced by many factors extraneous to the condition of the patient's heart.

The most that can be said regarding the interpretation of the EKG of January 14, 1976, is that the evidence was conflicting and presented a question of fact for the jury. The jury resolved the conflict in favor of the defendant, and the evidence supports that finding.

The evidence shows that insurance companies can obtain information on applicants for insurance from two sources. The Medical Information Bureau (MIB) is a centralized information bank for medical information collected by member insurance companies. Equifax is a company which investigates applicants.

The defendant requested information on Cutchall from MIB on two occasions. The first time was after the application had been received. The second request was made after Cutchall had asked to increase the coverage. Neither response indicated that Cutchall had heart disease. The defendant did not subscribe to a service whereby MIB would provide followup information.

After Cutchall's death the defendant requested an Equifax investigation. The report revealed information concerning Cutchall's heart condition which was in Equifax's files at the time the policy was issued.

The plaintiff argues that the trial court improperly instructed the jury on the elements of misrepresentation.

Instruction No. 7 instructed the jury that in order to find for the defendant it must find by clear and convincing evidence that Cutchall made a misrepresentation in response to questions asked on the application. The plaintiff complains that the instruction did not state that the false statements relied upon must constitute part of the completed application endorsed upon or annexed to the policy. The application was in fact attached to the policy and there was no issue of fact concerning the matter. It was not error to not submit that question to the jury.

The plaintiff contends that the court should not have used the term "misrepresentation" without defining it. The meaning of "misrepresentation" is reasonably clear and no further definition was required. In instructing a jury the trial court is not

required to define language commonly used and generally understood. *Otte v. Taylor,* 180 Neb. 795, 146 N.W.2d 78 (1966); *Flanagin v. DePriest,* 182 Neb. 776, 157 N.W.2d 389 (1968). There was no prejudicial error.

The plaintiff further argues that instruction No. 7 was erroneous because it required the jury to find for the defendant if the "defendant relied on the truthfulness of the misrepresentation . . . and was therefore deceived to its injury." The plaintiff argues that this equated reliance with injury; that is, if the defendant relied, it was injured. It is apparent that the instruction should have read "thereby" instead of "therefore." In *Greenberg v. Bishop Clarkson Memorial Hospital,* 201 Neb. 215, 221, 266 N.W.2d 902, 907 (1978), we said: "The meaning of an instruction and not its phraseology is the important consideration. . . . An inadvertent grammatical error in an instruction is harmless error if it is clear from the instruction itself and the other instructions given that the jury was not confused or misled by the error." The remainder of instruction No. 7 and instruction No. 9 made it clear that to find for the defendant, the jury was required to find that the defendant issued the policy in reliance upon Cutchall's misrepresentation. There was no prejudicial error.

The plaintiff argues that the jury was improperly instructed on the element of reliance. The plaintiff requested four instructions dealing with reliance. The first stated that an insurer can not rely on a misrepresentation if, through "proper attention to its own business," it should have known that such statements were false. The second stated that an insurer has a duty to investigate if the insurer had facts in its possession which would have led a prudent person to make such an inquiry, and an insurer will be charged with the knowledge it should have known. The third stated that an insurer will be charged with knowing what is in its files. The

fourth stated that if an investigation is conducted, the insurer is chargeable with the knowledge which would have been revealed by a thorough investigation. All four instructions were refused.

The trial court instructed the jury that an insurer may rely on the answers given in an application and need not conduct an investigation. Such reliance is not justified if there is something to put the insurer on notice that the answers are false. Such notice may require an investigation. The jury was instructed that the fact that an investigation is conducted by the insurer does not absolve the applicant from speaking the truth nor lessen the right of the insurance company to rely on the applicant's statements.

This instruction, together with an instruction dealing with imputing knowledge of its agents to the corporation, incorporates portions of the instructions requested by the plaintiff. The jury was instructed that notice of certain facts may negate justifiable reliance or may require the insurer to conduct an investigation. Thus, the jury was instructed that an insurer will be charged with knowing what is in its files; that is, it can not justifiably rely where it has actual knowledge of a falsehood. The jury was further instructed that a duty may exist to investigate if there are facts available to prompt such an investigation. When the trial court does not give verbatim requested instructions but does adequately instruct regarding the issues upon which the requests are made, it is not error to refuse the proffered instructions. *Jones v. Consumers Coop. Propane Co.,* 186 Neb. 629, 185 N.W.2d 458 (1971); *Treffer v. Seevers,* 195 Neb. 114, 237 N.W.2d 114 (1975); *Belitz v. Suhr,* 208 Neb. 280, 303 N.W.2d 284 (1981).

The court did not instruct the jury that an insurer can not rely on a misrepresentation if, through "proper attention to its own business," it should have known of the falsehood. Nor was the jury instructed that an insurer who conducts an investiga-

tion will be chargeable with the knowledge which should have been revealed by a thorough investigation.

The plaintiff relies upon *Traynor v. Automobile Mutual Ins. Co.,* 105 Neb. 677, 181 N.W. 566 (1921), as the basis for the first requested instruction. In the *Traynor* case the insured in good faith had indicated on the application that the automobile to be insured was built in 1913 when in fact it had been built in 1910. The judgment on a directed verdict for the defendant, who had asserted misrepresentation as a defense to its liability on the policy, was reversed. This court held that the statement as to when the car was built was not an index of the car's real value and thus not material to the risk. The court further stated that there was no deception to the injury of the insurer, and since *the model number of the car was revealed on the application,* the insurer had the duty and the means to ascertain the truth through "proper attention to its own business." *Id.* at 683, 181 N.W. at 568.

The plaintiff urges that the *Traynor* case creates a duty to discover the truth based on a standard of care of "proper attention to its own business." Thus, the plaintiff would hold the insurer to a standard of due care in issuing policies. This conclusion does not follow.

It is a general rule that a party can not set up negligence as a defense to an intentional act, but may when negligence rather than intent is pleaded against him. "In an action for . . . negligent misrepresentation, an honest belief in the truth of the representation is no defense, although the defense of contributory negligence is available . . . ." 86 C.J.S. *Torts* § 50 at 973 (1954). "[W]here the defendant's conduct is actually intended to inflict harm upon the plaintiff, there is a difference, not merely in degree but in the kind of fault; and the defense [contributory negligence] never has been extended to such intentional torts." W. Prosser, Law of Torts, *Negli-*

*gence: Defenses* § 65 at 426 (4th ed. 1971).

In *Hoock v. Bowman,* 42 Neb. 80, 85, 60 N.W. 389, 390 (1894), this court said: "The omission by one of the parties to an agreement, to make inquiries as to the truth of facts stated by the other, cannot be imputed to him as negligence. Every contracting party has an absolute right to rely on the express statement of an existing fact, the truth of which is known to the opposite party, and unknown to him, as the basis of a mutual agreement."

In 37 Am. Jur. 2d *Fraud and Deceit* § 250 at 333-34 (1968), the text states: "In consideration of the effect of negligence of a representee on the right to rely, the policy of the law toward actual fraud must always be considered, since, under modern judicial concepts of social relationship, the actual wrongdoing of the representor is considered to outweigh the carelessness of the representee, at least in instances of actual machination and deception. It has frequently been stated or held that the doctrine of negligence does not authorize deception in what is said or unsaid, and hence, the effect of negligence on the part of the party deceived may be tolled by the active fraud of the other party. In other words, the rule sanctioned by most of the courts is that where one party to a transaction induces the other party to enter into it by wilful misrepresentation, he cannot escape liability for his fraud by showing that such party could have investigated the representations made and would then have found that they were untrue. According to this view, negligence in trusting a representation will not excuse a positive wilful fraud, and contributory negligence is generally held not to be a defense to deliberate, active, or wilful fraud."

The general rule is that a person is justified in relying upon a representation in all cases if it is a positive statement of fact and if an investigation would be required to discover the truth. *Fricke v. Hart,* 206 Neb. 590, 294 N.W.2d 737 (1980). The fact that in-

quiries were made elsewhere which did not disclose the falsity of the representations is no defense. *Foxley Cattle Co. v. Bank of Mead,* 196 Neb. 1, 241 N.W.2d 495 (1976).

While no action will lie where ordinary prudence would have prevented the deception, that rule is generally applied where the means of discovering the truth was in the hands of the party defrauded. It is applicable where the party who claims to have been defrauded failed to read an instrument before signing it, or purchased real estate after inspecting the property and failed to notice obvious defects. See, *Erftmier v. Eickhoff,* 210 Neb. 726, 316 N.W.2d 754 (1982); *Dyck v. Snygg,* 138 Neb. 121, 292 N.W. 119 (1940).

Prosser, in a discussion of justifiable reliance as an element of an action for misrepresentation, dealt with the defense of contributory negligence and set forth the following standard of conduct: "[W]here there is an intent to mislead, it [contributory negligence] is clearly inconsistent with the general rule that mere negligence of the plaintiff is not a defense to an intentional tort. The better reasoned cases have rejected contributory negligence as a defense applicable to intentional deceit . . . .

". . . [T]he person deceived is not held to the standard of precaution, or of minimum knowledge, or of intelligent judgment, of the hypothetical reasonable man . . . .

"Rather . . . the matter seems to turn upon an individual standard of the plaintiff's own capacity and the knowledge which he has, or which may fairly be charged against him from facts within his observation . . . ." W. Prosser, Law of Torts, *Misrepresentation* § 108 at 716-17 (4th ed. 1971).

As applied to insurers, it has been held that they may justifiably rely on answers given them. "As a general rule, one has no duty to investigate another's representation, but may rely on its truth." *Fireman's Fund Ins. Co. v. Knutsen,* 132 Vt. 383, 392,

324 A.2d 223, 229 (1974). 12A Appleman, Insurance Law and Practice § 7296 (1981). The caveat to this rule is found in *Apolskis v. Concord Life Insurance Company,* 445 F.2d 31, 36 (7th Cir. 1971): "An insurance company need not make any independent investigation and may rely on the truthfulness of answers contained in an insurance application at least if there is nothing to put it on notice that certain answers may be false."

In *Fireman's Fund Ins. Co. v. Knutsen, supra,* the court held that there is no obligation to investigate each routine application where no suspicion arises.

The language of negligence is notably absent in these cases. The implication of these cases is that an insurer may justifiably rely on the insured's representations unless to do so would be "so utterly unreasonable, in the light of the information open to him," and of his skill or experience, "that his loss is his own responsibility." W. Prosser, *supra* § 108 at 715. "[A] fraud-feasor will not be heard to assert that his victim was negligent in relying on the misrepresentation." *Kubeck v. Consolidated Underwriters,* 267 Or. 548, 555, 517 P.2d 1039, 1042 (1974).

Thus, the prudent person standard is not applicable to an insurer's review of applications or to the decision to investigate. Nor should the insurer be held to a negligence standard in making an investigation. See *Fireman's Fund Ins. Co. v. Knutsen, supra.* Rather, the actions of the insurer should not be "so utterly unreasonable" that there could be no justifiable reliance. The instructions imposing a negligence standard were properly refused.

*Parker Precision Products Co. v. Metropolitan Life Ins. Co.,* 407 F.2d 1070 (3d Cir. 1969), involved facts similar to the present case. EKGs taken in 1957, 5 years before the application, revealed a heart attack. In 1962 insured's physician did not, at insured's request, report the heart attack nor indicate any abnormalities in the insured's EKGs of 1959 and 1960 in the insurance application. All EKGs re-

mained in the possession of the attending physician. The insurer's examiner relied on these representations in rating the application. The court held that when an insured answers a question and there is nothing else in the application to impair that statement, the insurer is entitled to rely on the answer given. A report on the application by a medical examiner consistent with the answers is sufficient to warrant this reliance. The court further indicated that an insurer is not under an obligation to examine each applicant to reveal obscure health problems.

The instruction that the fact that an investigation was conducted does not absolve the applicant from telling the truth nor lessen the right of reliance was proper. *Wainwright v. Washington Nat. Ins. Co.,* 142 Neb. 372, 6 N.W.2d 368 (1942). See, also, *MFA Mut. Ins. Co. v. Meisinger,* 183 Neb. 285, 159 N.W.2d 829 (1968); *Allstate Ins. Co. v. Vincent Meloni, et al.,* 98 N.J. Super. 154, 236 A.2d 402 (1967); 12A Appleman, *supra* § 7296.

The plaintiff argues that the insurer should not have been permitted to read into the record portions of the deposition of Otto Staehr and to introduce an exhibit from the deposition. The plaintiff asserts that since counsel for the insurer was not present at the deposition it waived the right to cross-examination.

The plaintiff had read part of the Staehr deposition at the trial. The defendant then read a statement and offered an exhibit which, with the plaintiff's consent, had been included in the deposition by the counsel for Staehr's employer, MIB.

Neb. Rev. Stat. § 25-1267.04(4) (Reissue 1979) provides: "If only part of a deposition of a witness is offered in evidence by a party, an adverse party may require him to introduce all of it which is relevant to the part introduced, and *any party may introduce any other parts relevant to the issues and not introduced.*" (Emphasis supplied.) The evidence was properly admitted.

Further, because the plaintiff consented to the statement being made a part of the deposition record, it was estopped from complaining of its use at trial. See *Smith v. Smith,* 201 Neb. 21, 265 N.W.2d 855 (1978). Foundation for the exhibit was properly laid through the deposition.

On rebuttal the plaintiff sought to read portions of the deposition of Dr. Aggett as admissions against interest. The trial court excluded this evidence, stating that Dr. Aggett had been on the witness stand for several hours, during which time counsel had ample opportunity to confront him with the deposition. At the time of rebuttal Dr. Aggett was unavailable. The plaintiff argues that the exclusion of this deposition testimony of Dr. Aggett was reversible error.

In *Hyde v. Cleveland,* 203 Neb. 420, 279 N.W.2d 105 (1979), we held that it may be error to refuse deposition testimony offered as an admission on rebuttal. However, it must be shown that the exclusion of the evidence prejudiced the defendant in some way. *Bailey v. Mohr,* 199 Neb. 29, 255 N.W.2d 866 (1977).

Here, the plaintiff had been permitted to cross-examine Dr. Aggett at length concerning his deposition. During that examination, Dr. Aggett repeatedly sought to explain the technical nature of his answers. The excluded evidence, which consisted of isolated bits of technical testimony taken out of context of such explanation, did not clearly constitute admissions against interest. It was also somewhat cumulative.

The admission of rebuttal testimony is largely within the discretion of the trial court. *Gee v. Dinsdale Brothers, Inc.,* 207 Neb. 224, 298 N.W.2d 147 (1980). Since the plaintiff was allowed to probe into the deposition at length on cross-examination, no prejudice resulted to the plaintiff. To have admitted the evidence would have been prejudicial to the defendant because the technical nature of the testimony warranted an opportunity to explain.

There being no error, the judgment is affirmed.

AFFIRMED.