Mitchell, C. J.
 

 This action was instituted by Roy S. Hansen against the Continental Casualty Company, a corporation, to recover benefits under a policy of accident insurance. In the trial of the case, at the close of the testimony on behalf of the plaintiff, and again at the close of all of the testimony, the defendant challenged the sufficiency of the evidence to warrant a verdict in favor of the plaintiff, both of which challenges were denied. The jury returned a verdict for the plaintiff, whereupon the defendant interposed a motion for judgment notwithstanding the verdict. This motion was denied, and the defendant has appealed from a judgment on the verdict. There was no motion for a new trial.
 

 The only question presented on the appeal is the sufficiency of the evidence to justify the verdict and judgment.
 

 The transaction out of which the action arose occurred in Seattle. Guernsey-Newton Co., a corporation, of Seattle, at that time was general agent in this state for the appellant and, as such agent, executed and delivered the policy in question. The application of the respondent for the insurance was obtained by T. J. McNally, of Seattle, who was neither a licensed or statutory agent or solicitor for the appellant or its general agent, Guernsey-Newton Co. He was under no obligation to do any work for them or either of
 
 *691
 
 them. It appears that, acting independently as a broker, he procured applications, including the present one, for different kinds of insurance in considerable number, a good many of which were turned over to Guer ns ey-N ewton Co. as agent of the appellant. The written application in this case, which was made and signed by the respondent on September 9, 1927, contains the following questions and answers:
 

 “17. Are you now suffering from or have you ever had tuberculosis, paralysis, rheumatism, hernia, appendicitis, syphilis, internal ulcers, gall stones, epilepsy, or any chronic or periodic mental.or physical ailment or disease, or are you now crippled or maimed, or have you any defect in hearing, vision, mind or body?
 

 “A. No.
 

 “18. Have you during the past five years had any medical or surgical advice or treatment?
 

 “A. None.
 

 “20. Do you understand and agree to each of the following statements lettered (a), (b) and (c)? (a) That the falsity of any answer in this application for a policy shall bar the right to recovery thereunder, if such answer is made with intent to deceive or materially affects either the acceptance of the risk or the hazard assumed by the company; (b) that this proposed insurance shall not take effect until this application has been accepted by the company and the policy issued; (c) that you will pay for this policy an annual premium of $140.00 as follows: Annually on September 9.
 

 “A. Yes.”
 

 On that day respondent paid part of the premium to McNally. On the next day, Saturday, September 10, the respondent was seriously injured in an automobile accident, for which he promptly received the services of a physician, and on Monday, September 12, the written application for the insurance was delivered by McNally’s clerk to Guernsey-Newton Co., who, with
 
 *692
 
 out any notice that Hansen had already been injured, signed and delivered the policy to McNally for Hansen and charged the premium to McNally. Hansen’s application for the insurance was attached to and made a part of the policy when it was issued. In procuring the execution of the policy on September 12, it appears that, without giving any reason therefor, McNally, through his clerk, requested that the policy be dated back so as to run one year from noon, September 9, which the general agent executing the policy says was done, upon this special request, as a matter of courtesy, a thing sometimes done for brokers on their special request where the broker takes an application on Friday or Saturday and is unable to deliver it into the hands of the agent for the policy before the following Monday morning. On Monday, when McNally got the policy, he knew that Hansen had been injured on Saturday. The agent, Guernsey-Newton Co., was not aware that Hansen had been injured. Afterwards, upon learning that Hansen had been accidentally injured before the policy was issued, the appellant declared it would not be bound by the policy to pay for the injuries that occurred on September 10, and charged off its books the premium account for this policy against McNally,
 
 and
 
 this suit resulted.
 

 Appellant’s contention, which we think must be sustained, is that respondent’s agent McNally, in procuring the pre-dating of this policy so that on its face it covered a date on which an accident had already occurred, known to respondent’s agent but entirely unknown to the appellant and its agent, was guilty of conduct that voided the policy as to any liability for such injuries.
 

 The rule applicable generally to the relation of the application for insurance and a policy issued thereon
 
 *693
 
 is well stated in
 
 Olson v. American Central Life Ins. Co.,
 
 172 Minn. 511, 216 N. W. 225, as follows:
 

 “That the assent of both parties to the same set of terms is necessary to create a contract is axiomatic. An offer never becomes a contract until accepted. Where an application provides that the insurance shall not take effect until the approval of the application by the insurer, no contract of insurance exists prior to such approval, although the application also provides that the policy shall bear the same date as the application and that the time covered by the premium shall be measured from that date.
 
 Steinle v. New York Life Ins. Co.
 
 (C. C. A.), 81 F. 489;
 
 Mohrstadt v. Mutual Life Ins. Co.
 
 (C. C. A.) 115 F. 81;
 
 Rushing v. Manhattan Life Ins. Co.
 
 (C. C. A.) 224 F. 74;
 
 Bradley v. New York Life Ins. Co.,
 
 (C. C. A.) 275 F. 657;
 
 Cooksey v. Mutual Life Ins. Co.,
 
 73 Ark. 117, 83 S. W. 317, 108 Am. St. Rep. 26;
 
 Wheelock v. Clark,
 
 21 Wyo. 300, 131 P. 35, Ann. Cas. 1916A, 956;
 
 Long v. New York Life Ins. Co.,
 
 106 Wash. 458, 180 P. 479.”
 

 In
 
 Downs v. Georgia Casualty Co.,
 
 271 Fed. 310, it was held (quoting from the syllabus):
 

 “The indorsement, by an agent on á policy insuring against liability on account of injuries caused by an automobile, of its transfer to a different car, and the dating of the transfer back to a prior date, at request of the owner,
 
 held
 
 not to impose liability on the insurer for an injury caused by such substituted car previous to the actual transfer and not then known to either the company or its agent.”
 

 In the case of
 
 Cecil v. Kentucky Livestock Insurance Co.,
 
 165 Ky. 211, 176 S. W. 986, application had been made by Cecil for insurance against loss by death of a horse he owned. The application for the insurance was made on March 26, 1913, and was accepted and the policy issued at the home office on March 29, 1913, but dated back to March 26,1913, the date of the application. The policy was forwarded to Cecil, who received it and paid one year’s premium on it on
 
 *694
 
 April
 
 1, 1913. The horse died
 
 on March 27, 1914, one year and one day after the commencement of the term of insurance as expressed upon the face of the policy, but lacking four days of being one year according to the terms of the application for the policy and the date of payment of the premium. Cecil recovered on the policy.
 
 Among
 
 other things the court said:
 

 “ . . . since Cecil paid for insurance for a year, which, according to the application was not to begin until the premium was paid, there would have been no liability under the policy until it was delivered and the premium was paid, and consequently the year did not begin to run until April 1st, 1913.
 
 Mutual Life Insurance Co. v. Lucas, 25 Ky.
 
 Law 2052, 79 S. W. 279,
 
 and
 
 the cases there cited.”
 

 To the same effect was the life insurance case of
 
 Stinchcombe v. New York Life Ins. Co.,
 
 46 Ore. 316, 80 Pac. 213.
 

 The rule that there is no liability on a policy, upon an application of the kind in the present case, for an injury occurring between the date of the application to which the policy was predated and the date on which the policy was actually issued, where such injuries were unknown to the insurer at the time of issuing and delivering the policy, goes hand in hand with another well settled rule that changes in condition material to the risk which occur between the opening of negotiations for insurance and the issuance of the policy must be disclosed, as an elementary spirit of fair dealing.
 
 Stipcich v. Metropolitan Life Ins. Co.,
 
 8 Fed. (2d) 285, and same case, 72 Law Ed. 895, and cases there cited, although that case was finally decided against the insurance company upon the question of the authority of an agent to receive disclosures of a changed condition of the health of the applicant, so as to bind the insurance company.
 

 The general rule requiring such disclosures to be
 
 *695
 
 made prior to the issuance of the policy will not he confused, of course, with that class of cases of which
 
 Starr v. Mutual Life Ins. Co.,
 
 41 Wash. 228, 83 Pac. 116, is typical, in which case the receipt of the agent for the premium paid at the time of receiving the application was what is known as a “binding receipt,” making the insurance effective from the date of the receipt.
 

 Referring to the case of
 
 New York Life Ins. Co. v. Moats,
 
 207 Fed. 481, respondent contends that, under a policy dated back to the date of the application, the insurance is effective from that date, even though the application provide that it shall not become effective until the policy has been issued, because, once the policy is issued, it relates back to, and takes effect from, the date of the application. Counsel, we think, do not take notice of the precise situation in that case. In it the insured made application to the insurance company on March 16, 1911, for two policies of insurance.
 

 “In and by the applications it was provided that the insurance thereby applied for should not take effect unless the first premium was paid, and the policies delivered to and received by the applicant during his lifetime, and that, unless otherwise agreed in writing, the policies should then relate back to and take effect as of the date of the applications.”
 

 The first premium was paid on the two policies on the date of the applications. The policies were executed March 25, 1911, and delivered to the insured on April 6, 1911, receipt of the first premium being admitted in the policy. The policies also provided
 

 “ . . . that after their delivery to the insured, they should take effect as of the 16th day of March, 1911, that being the date of the applications made by the insured, and the date of the payment of the first premium on each policy.”
 

 
 *696
 
 Very different from the case at bar, wherein the application simply provides that the “proposed insurance shall not become effective until this application has been accepted by the company and the policy issued.” Nothing whatever said about its then relating back.
 

 The case of
 
 Insurance Co. v. Higginbotham,
 
 95 U. S. 380, is to the same general effect. It was a case of the renewal of a life insurance policy after It had lapsed for failure to pay an annual premium. The pertinent portion of that case, so far as it is to be considered in the present case, is this:
 

 “The facts referred to, we think, show that, although actually completed on the 14th of October, the jury would have b,een warranted in finding that the contract was understood and intended by the parties to take effect by relation as of the 1st of that month.”
 

 Upon that question in this case, there is no testimony as to when the respondent intended the insurance to take effect except the statement in his application, “not to take effect until this application is accepted by the company and the policy issued.” There was no other meeting of the minds of the parties.
 

 The case of
 
 Gordon v. United States Casualty Co.,
 
 54 S. W. (Tenn.) 98, seems to be relied on confidently by the respondent. That case involved a policy of accident insurance dated back to the date of the application, upon which recovery was sought and had for injuries occurring after the date of the application, but before the policy was actually issued. That case is readily distinguishable from the present one in essential parts, in our opinion. The opinion in that case is long and somewhat involved, and there may be found in it some excerpts that lend support to respondent’s contention in the present case. The application for insurance was made on March 1, 1898, and the policy
 
 *697
 
 was issued March 18, 1898, two days after the accident occurred. Finally stating the case the court said :
 

 “To restate in brief the facts as we find them, they are:
 
 That Dr. Duncan was the general agent of the defendant company at Chattanooga. That he had authorised White to take and receive applications for him. White had an arrangement by which he (White) was to be responsible for the premiums on such applications.
 
 That Dr. Duncan had agreed to pay White a commission on the premiums received, and did pay a commission on this policy.
 
 That when the application was filed, and left with White to be handed to Dr. Duncan, it was stated that the insurance would date from noon on that day, the 1st of March, 1898.
 
 That the application was received by Dr. Duncan himself on that day from Mr. White, and was forwarded,
 
 and on the application there was an indorsement that the premium was paid.”
 
 (Italics ours.)
 

 As noticed, there was an understanding in that case between the insured and an agent of the company at the time the application was given that the insurance should take effect from that date.
 

 The case of
 
 El Dia Ins. Co. v. Sinclair,
 
 228 Fed. 833, relied on by the respondent, is not in point. It was a fire insurance case, the fire having occurred on April 29, 1913. In the answer of the insurance company to the complaint on the policy, the insurance company admitted “that a contract of insurance’was entered into on April 28, 1913,” and that a policy was to be issued therefor. The evidence showed that the policy was issued and dated May 10, 1913, and antedated showing that the term commenced April 28, according to the admitted contract. The opinion still further shows that, “on July 7,1913, long after the defendant had notice of the fire, it accepted and retained the premium, amounting to $105.”
 

 Contrary to the views above expressed as to the law which we think applicable to the present case, the
 
 *698
 
 trial court denied the motion for judgment notwithstanding the verdict, on the theory that, under the facts in this case, the appellant was liable on the contract of insurance from the date expressed in the policy, though it was not actually issued until after the accident occurred, and that “no disclosure to the insurance company of the changed conditions” was necessary.
 

 The respondent, however, seeks to justify the judgment on the theory that the insurance company did have notice of the injuries prior to the issuance and delivery of the policy. In this respect, the only circumstance or suggestion of proof was as follows: Mr. Sornberger, who was treasurer of Guernsey-Newton Co., together with his wife, visited Mr. and Mrs. McNally on Sunday evening, September 11, during which visit a woman claimed by Mr. and Mrs. Mc-Nally to be the wife of the respondent Hansen called and in a separate room told Mr. McNally of the injuries to her husband the day before. Sornberger did not know the woman and had never heard of her or her husband. She and Mr. and Mrs. McNally testified Mrs. Hansen was at that time introduced to Mr. and Mrs. Sornberger. This was denied by Mr. and Mrs. Sornberger. There is no claim that the accident in question was referred to while Mr. Sornberger and Mrs. Hansen were present on that occasion, but, in speaking of the visit of Mrs. Hansen and the information Mr. McNally claims to have received from her of the accident, respondent’s counsel asked Mr. McNally if he informed Sornberger that evening of the accident. His answer was: “As my memory serves me, I am quite certain that I did.” On cross-examination, he testified as follows:
 

 “Q. A minute ago Mr. Sullivan asked you this question, he said did you tell Mr. Sornberger of this ac
 
 *699
 
 cident and you said ‘If my memory serves me correctly I believe that I did?’ A. Yes, sir. Q. Now did you or not? Are you certain of it? A. I would not be positive, but I am quite certain that the surroundings were such that I told Mr. Sornberger that the woman —having been an accident or this accident. I can’t come right out and actually remember what I had said to the man, but I am quite certain that I informed him. Q. You couldn’t say positively that'you did? A. No, sir, I couldn’t say that positively as to that particular afternoon. ’ ’
 

 The question of the disclosure of this accident was, as we have already seen, of vital importance in this case. It was necessary, therefore, for the respondent to establish it by a fair preponderance of the evidence. Surely someone on behalf of the respondent should have known and testified with some degree of certainty and positiveness on this important subject. This witness frankly admitted he could not. No other witness in any way referred to the subject. We have adopted the fair and reasonable rule of requiring substantial evidence, not merely a scintilla of evidence, to satisfy the requirement of a preponderance of the evidence. And while, under a motion for judgment notwithstanding the verdict, all evidence and fair inferences from the evidence must be considered in the light most favorable to the party against whom the motion is directed, we are nevertheless satisfied that there is no substantial evidence in this case to show that any authorized agent of the appellant had any notice of the accident in question until after the policy had been issued. Mr. Sornberger, probably the first one to learn of it, testified he did not hear of it until several days after the policy was issued. The case in this respect falls within, the rule announced in the very recent case of
 
 Dunsmoor v. North Coast Transportation Co.,
 
 154 Wash. 229, 281 Pac. 995, as follows:
 

 
 *700
 
 “It was incumbent upon the appellant, in order to recover against the respondent, to show that its driver was guilty of negligence. This she must show by substantial evidence — a scintilla of evidence will not do — ■ and, in our opinion, the evidence here is not of that substantial character on which a jury is permitted to found a verdict.”
 

 Judgment reversed and the cause remanded with instructions to enter judgment in favor of the appellant notwithstanding- the verdict of the jury.
 

 Millard, Parker, Tolman, and Beals, JJ., concur.