(No. 22575.—
(No. 22576.—

THE WESTERN AND SOUTHERN LIFE INSURANCE COMPANY, Plaintiff in Error, *vs.* KAZIMIERA TOMASUN, Defendant in Error.—KAZIMIERA TOMASUN, Defendant in Error, *vs.* THE WESTERN AND SOUTHERN LIFE INSURANCE COMPANY, Plaintiff in Error.

*Opinion filed December 18, 1934.*

HOYNE, O'CONNOR & RUBINKAM, (NATHANIEL RUBINKAM, and WILLIAM S. ALLEN, of counsel,) for plaintiff in error.

EDWARD J. KELLEY, and DANIEL L. MADDEN, for defendant in error.

Mr. JUSTICE SHAW delivered the opinion of the court:

On June 5, 1928, Emilay Tomasun applied to the Western and Southern Life Insurance Company for a life insurance policy in the sum of $2000, naming the defendant, Kazimiera Tomasun, as beneficiary. In that application she agreed that all statements and answers to questions were complete and true and that they should form a part of the contract of insurance applied for. By it she also certified that she was then in good health; that she was ordinarily in good health, and that in her statements and answers no information had been withheld touching her past or then present state of health. The application also

contained the usual provision agreeing, on behalf of herself and her beneficiary, that no liability should attach under the policy until it had been issued and delivered during her lifetime and good health. The insured was examined on behalf of the company by Dr. Kelley on the date of the application. In answer to specific questions, she stated that she considered herself in sound health; that she had never been under treatment in a hospital or sanitarium; that she had never undergone any surgical operation; that there was no then present reason for her to undergo a surgical operation; that she had had no disease or injury during the past five years; that she had never been treated for cancer, and that she had never had any disease of the breast, ovaries or uterus. The application was accepted by the company and a policy delivered about two weeks thereafter. It contained the statutory provisions and included what is known as the two-year incontestable clause, which is in part, "and shall be incontestable after two years from its date except for non-payment of premiums." The insured died September 24, 1929, within the two-year period, and thereafter, still within the two-year period, on June 4, 1930, the company filed its bill of complaint in the circuit court of Cook county setting forth the facts hereinabove mentioned and in addition thereto alleged fraud and falsehoods in connection with the application. It is also alleged in the bill that the insured was not in good health at the time of the application and delivery of the policy but was afflicted with disease and had had medical attendance and been under treatment in a hospital or sanitarium; that she had previously had cancer or carcinoma of the cervix of the uterus, with metastasis to the bladder and bowel; that when she made the application she well knew her answers to be false and that the policy was issued solely in reliance upon their truth; that if the company had known the answers to be false it would not have issued and delivered the policy, and that the falsity of the answers was not

discovered until after the death of the insured. It is further alleged that the beneficiary under the policy has threatened that she would wait until two years after the issuance thereof before bringing suit, and that if suit is not brought prior to the expiration of the two-year period, the company will, in an action at law, be deprived of its just defense by reason of the incontestable clause above quoted. The bill tenders a return of the premiums paid and prays a cancellation of the policy by reason of the fraudulent manner of its procurement and an injunction restraining the beneficiary named in it from prosecuting an action at law. Upon this bill and a petition a temporary injunction was issued by the trial court. After demurrer overruled an answer was filed, the cause heard, and on April 3, 1933, a decree was entered dismissing the bill for want of equity, from which an appeal was duly perfected to the Appellate Court for the First District. The decree was affirmed in the Appellate Court and the cause is here on *certiorari*.

After the filing of the bill of complaint in the chancery suit above described an action at law was commenced in the superior court of Cook county, entitled Kazimiera Tomasun *vs.* The Western and Southern Life Insurance Company, upon this same policy of insurance. This action was started by summons on September 22, 1930, after the expiration of the two-year period of incontestability. The declaration was in the usual form and was filed on October 29, 1930. On December 4, 1930, the defendant filed its plea setting forth that prior to the filing of the suit it had filed in the circuit court of Cook county its bill in chancery, which was at that time pending and undisposed of in that court, and in which it was prayed that an injunction might be issued restraining and enjoining the plaintiff from instituting or prosecuting the instant case and alleging an identity of issues and subject matters. A general demurrer to this plea was sustained and an amended plea filed on February 28, 1931, which set forth

the same facts as in the original plea, but further alleged that a judge in the circuit court had issued a temporary injunction in the chancery suit pending in the circuit court as hereinabove set forth, and further alleging that the court of chancery had prior, and therefore exclusive, jurisdiction of the same subject matter and between the same parties, and that the chancery proceeding constitutes a bar to this present suit. On motion this plea was stricken. Thereupon a second amended plea, general issue, with notice and affidavit of merits, was filed, and later, on June 6, 1933, an additional plea was filed instanter. The substance of all of these defenses was the fraud in procuring the insurance and the prior and exclusive jurisdiction of the court of chancery. Upon all of these pleas and special defenses being ruled insufficient, the company abided by them and was defaulted for want of plea. Judgment was entered in the sum of $3500, and after the usual motions an appeal was taken to the Appellate Court, where the judgment was affirmed. This cause is also here upon *certiorari,* and the two cases have been consolidated for disposition upon one opinion.

On trial of the issues in the chancery case it was proved, without contradiction, that in November, 1927, a little over six months prior to the date of the application here in question, Dr. Clyde E. King performed an operation on the deceased at the Lakeside Hospital, in Chicago, removing her uterus, tubes and ovaries. He had seen her during the month preceding this operation. The surgical procedure consisted of opening the abdomen with a Y-shaped incision, which kept the patient in the hospital two weeks. He again treated her in January, at which time he referred her to Dr. Benjamin H. Orndoff, with whom she consulted on January 25, 1928, less than five months prior to her application for insurance. Dr. Orndoff testified that she told him she had been operated on by Dr. King and that she came to consult him on Dr. King's recommendation.

Dr. Orndoff made local and X-ray examinations and found an open, ulcerated and bleeding lesion in the vagina. He gave her radium and X-ray treatments and also removed certain pieces of tissue by electrical cautery. He performed two operations on her, the first one being on June 6, 1928, which will be noted as the next day after the date of the application for insurance. It was his opinion that she was not in sound health on that day or the day preceding, and that in his opinion she had had cancer when he saw her in January and also in June. He also stated his opinion that the cancer had taken many months to develop and that she went back to the hospital in September and October. It was proved by depositions that the insured died September 24, 1929, at the Wisconsin General Hospital, in Madison, and that a port-mortem was performed there by Dr. Ritchie. The records of this hospital introduced in evidence show that she was admitted August 13, 1929, and that she gave a complete history, including the operations by Dr. Orndoff and Dr. King. It also appears from the record that at some time during this period she had been to the Mayo Clinic at Rochester and received certain treatment there.

It is not denied in the record that the answers of the insured as shown by the application, which is a part of the policy, were, in fact, false. Neither is it denied that she was not in good health at the time the policy was issued and delivered to her. It is claimed by the beneficiary, and was found by the trial and Appellate Courts, that Mrs. Tomasun was a Lithuanian and did not read English or understand it readily; that when the examining doctor asked her questions she probably did not understand what he meant, and that as a result there could not have been any fraud or intentional withholding or misrepresentation of any fact. To sustain the decree of the trial court and the judgment of the Appellate Court affirming it, the beneficiary relies principally upon this contention.

In an equitable action for the cancellation of an insurance policy upon the ground that misrepresentations had been made as to facts material to the risk, it is not essential that the applicant should have willfully made such misrepresentations knowing them to be false. They will avoid the policy if they are, in fact, false and material to the risk even though made through mistake or in good faith. In *United States Fidelity and Guaranty Co.* v. *First Nat. Bank,* 233 Ill. 475, we stated this rule in the following language: "The law is well settled, in its application to insurance contracts, that a misrepresentation of a material fact, in reliance upon which a contract of insurance is issued, will avoid the contract, and it is not essential, in equity, that such a misrepresentation should be known to be false. A material misrepresentation, whether made intentionally or knowingly or through mistake and in good faith, will avoid the policy." The same rule has been applied in many other jurisdictions.

We thus find the authorities firmly established that it was not necessary to an avoidance of the policy that Mrs. Tomasun should know that her answers were untrue, altho that she did know them to be untrue we can hardly find room to doubt upon the record presented. On the day she signed the application she consulted Dr. Orndoff regarding her health and on the next day was operated on in the North Chicago Hospital. She was not in sound health on June 5 or on June 6, 1928, nor on the date she received the policy. Neither had she been in good health for many months previous thereto, and it is impossible to believe that any woman who had suffered the severe abdominal operation which she underwent about six months prior to her application, and who had since been under constant medical observation and treatment, could have in good faith considered herself an insurable risk in any life insurance company. Regardless of her knowledge or lack of knowledge of the truth of her statements, it has been held by the high-

est authority that having accepted and retained the policy of insurance, with the copy of her application attached thereto, she is entirely bound by it. Regardless of her knowledge on June 5, it cannot be urged with any degree of plausibility that she considered herself in good health when the policy was delivered two weeks later, and it became her duty during that interim—*i. e.,* after her examination and before the delivery of the policy—to disclose the changed condition in her health to the insurer. On this point the Supreme Court of the United States has said: "But the reason for the rule still obtains, and with added force as to changes materially affecting the risk which come to the knowledge of the insured after the application and before the delivery of the policy, for even the most unsophisticated person must know that in answering the questionnaire and submitting it to the insurer he is furnishing the data on the basis of which the company will decide whether by issuing a policy it wishes to insure him. If, while the company deliberates, he discovers facts which make portions of his application no longer true, the most elementary spirit of fair dealing would seem to require him to make a full disclosure. If he fails to do so, the company may, despite its acceptance of the application, decline to issue a policy." *Stipcich* v. *Metropolitan Life Ins. Co.* 277 U. S. 311.

We can find no reason for multiplying authorities or for considering other points raised in the briefs. Viewing the record with the utmost charity toward the insured deceased, we can find no reason to believe that she acted otherwise than with fraudulent intent, nor to believe that she considered herself in good health, or a fairly insurable risk, when the application was made. Regardless of these facts, her beneficiary would in any event be barred, under the holding in the *Stipcich case, supra,* for failure of the insured to make disclosure of the operation of June 6 during the pendency of her application.

The beneficiary quotes at length from certain cases upon which she relies and which have received our consideration. *Security Trust Co.* v. *Tarpey,* 182 Ill. 52, was a bill in equity for the cancellation of two insurance policies upon a claim of fraud in their procurement. The record affirmatively showed that the company was engaged in the insuring of sub-standard risks, accepting as policyholders those rejected by other companies, for which it charged approximately thirteen per cent higher premiums than companies requiring healthy applicants. The court found that there was no fraud; that full disclosure had been made to the agents and physician, and that no equitable reason existed for canceling the policies. In the language of the opinion by the late Justice Cartwright, the company "had before it the information in the medical examination that the lungs were not free from the indication of disease; that the respiration was not full, easy and regular; that the number of respirations per minute was 22, that the rate of pulse (full minute) was 85, and that there was a prolonged expiratory murmur at the apex of the right lung. These facts are shown by the evidence to indicate to a physician the probability of the disease of which Cummings died. Complainant was fully cognizant of all of these facts, and the general agent who delivered the policies knew that Cummings had been rejected by the Iowa company."

*Coverdale* v. *Royal Arcanum,* 193 Ill. 91, was an action of assumpsit on a benefit certificate to which a defense was interposed by plea that the insured had warranted in his application that he was not, and never had been, engaged in the manufacture or sale of intoxicating liquors, which was false. It was alleged by replication that the defendant was fully informed of the insured's occupation and had full knowledge that he was engaged in the sale of liquor and with such knowledge accepted him as a member. The decision, in so far as material here, was upon the ground that the subordinate lodge was the

agent of the supreme lodge, and that its officers and members had full knowledge of the occupation in which the insured was engaged. The case of *Peterson* v. *Manhattan Life Ins. Co.* 244 Ill. 329, involves the same holding, following the familiar rule that an insurance company cannot insist upon a forfeiture for a cause of which it had knowledge when the policy was issued. In *Farrenkoph* v. *Holm*, 237 Ill. 94, the decision was likewise based upon the ground that the agent of the company had full knowledge as to the facts questioned. Likewise the case of *Weisguth* v. *Supreme Tribe of Ben Hur*, 272 Ill. 541, holds that the examining physician is the agent for the insurer, and that his knowledge of past ailments and medical treatments of the insured is the knowledge of the company.

*Joseph* v. *New York Life Ins. Co.* 308 Ill. 93, is also relied on by the beneficiary. The holding in that case, however, is not in any way at variance with our holding in this one. The case was disposed of on the pleadings and only two points were passed on. The first point was as to the sufficiency of the second plea of the insurance company. This plea alleged the making of various statements by the insured, upon an oral and physical examination, which were said to have been false. The plea, however, did not allege that these statements were all contained in the written application attached to the policy, which provided that "all statements made by the insured shall, in absence of fraud, be deemed representations and not warranties, and no such statements shall avoid this policy or be used in defense to a claim hereunder unless it be contained in said written application," a copy of which was attached to the policy. The plea was held to be insufficient for this reason. The second point determined was, that the replications, which alleged that all of the insured's answers were true, full and complete, were sufficient replies to the pleas, and that, since the defendant company stood

on its general demurrer to these replications, the judgment for plaintiff on the pleadings necessarily followed.

The beneficiary also cites many cases following the familiar rule that the language of an insurance policy, which is the language of the insurer, will, when ambiguous, be construed most strongly against the company. Conceding the general correctness of this rule, except in those cases where certain language is required by statute, it has no application to this case, as there is no question of ambiguity presented.

We have reviewed all of the authorities cited to sustain the decree and judgment and are of the opinion they cannot be sustained. An applicant for life insurance is not exempted from the operation of the ordinary rules of common honesty and good faith in his dealings with the company in procuring a policy. We are satisfied that the policy in this case was procured with fraudulent intent, in violation of all equitable rules of good faith and fair dealing, and that it cannot be permitted to stand.

It is therefore our order that the judgment of the Appellate Court in the consolidated cases be reversed; that the decree of the circuit court of Cook county in the chancery case of Western and Southern Life Insurance Company *vs.* Tomasun be reversed and the cause remanded to that court, with directions to enter a decree in accordance with the prayer of the bill, and that in the action at law entitled Tomasun *vs.* Western and Southern Life Insurance Company the judgment of the superior court of Cook county be reversed.

> *No. 22575—Decree reversed and cause remanded.*
> *No. 22576—Judgment reversed.*