WESTERN FIRE INSURANCE Co., Plaintiff-Appellant, *v.* JOSEPH MOSS *et al.*, Defendants-Appellees.

(No. 55718;

First District (1st Division)—May 7, 1973.

*Rehearing denied June 7, 1973.*

Hinshaw, Culbertson, Moelmann, Hoban & Fuller, of Chicago, for appellant.

Philip H. Corboy, of Corboy and Kotin and Associates, and Samuel L. Evins, of Richman & Evins, both of Chicago, (Sidney Z. Karasik, of counsel,) for appellees.

Mr. JUSTICE HALLETT delivered the opinion of the court:

## The Nature of the Action

This was a declaratory judgment action brought by the plaintiff insurance company against the defendant seeking to have a predated insurance policy issued to defendant Moss declared void *ab initio*. A third party action filed by said defendant against Louis Kamberos was severed at the time of trial and is not involved on this appeal. After a bench trial, the court held the policy to be valid and entered judgment in favor of the defendants and against the Plaintiff, and this appeal followed. No questions are raised on the pleadings.

## The Facts

On Friday, August 16, 1968, defendant Moss telephoned his broker, the Kamberos Insurance Agency, and asked to speak to Louis Kamberos, who had previously obtained auto insurance for him. Kamberos was not in but the call was transferred to a William Dante, an independent insurance broker, who shared offices with Kamberos but was not associated with him. Moss told Dante that he intended to buy a boat, motor and trailer and wanted physical damage and public liability on it and gave him its value.

At about noon the next day, Saturday, August 17, 1968, Moss bought the boat, motor and trailer and telephoned Kamberos, who was out. Again he talked to Dante, who told him that the serial numbers of the boat, motor and trailer would be needed. Moss told him that he was going over to pick up the boat and asked if he could put him under a

binder. Dante said that he could but that he would have to be there by 2:00 that afternoon. At about that time Moss went to Kamberos' office but neither Kamberos nor Dante was there. Moss left a piece of paper with the serial numbers on it with someone else in the office and both of them marked on the envelope the time. Moss thought that he was then insured.

On Saturday and Sunday Moss used the boat. On Monday morning Kamberos found the serial numbers with Dante's note on his desk and assumed that Moss had bought the boat on August 17, 1968, and wanted the effective date of insurance to begin on that date. In the afternoon, in response to a message to call Kamberos, Moss contacted him. Kamberos told Moss that he needed the exact cost breakdown on the boat, motor and trailer and Moss told him to call Milo-Craft, the vendor, for those details. Moss also told Kamberos that he had used the boat twice and thought that he was insured and that he intended to use it again that night. Kamberos told him that he was insured. Kamberos tried twice unsuccessfully on Monday to reach Fencil, of Milo-Craft, to get the breakdown figures, and left word for Fencil to call him.

On Monday evening August 19, 1968, the boat collided with a barge on the Calumet River. Moss suffered serious injuries, was in intensive care for 14 days and was hospitalized for 31 days. The other occupants of the boat, defendants O'Malley, Regan and Steglisch, also suffered injuries. George O'Donnell, Jr. was killed and his administrator is a defendant in this action.

On Tuesday morning, August 20, 1968, Kamberos finally reached Fencil and got the cost breakdown on the boat, motor and trailer and, unaware of the accident the night before, completed the application for insurance effective on August 17, 1968, and mailed it to the Buschbach Agency, an agent for the plaintiff, Western Fire Insurance Company.

That afternoon, Tuesday, August 20, 1968, Moss' sister notified Kamberos' secretary that "there was an occurrence" and she passed this on to him. Kamberos did not contact either the Buschbach Agency or Western Fire because he did not know "where it happened; or who or what was involved", although he did testify that had he known of the accident before he mailed in the application, he would not have mailed it.

On the 21st or 22nd of August, the Buschbach Agency received the application. There had been no prior conversations with Kamberos or Moss and no request for a binder had been made. The Buschbachs put their sticker on the application and forwarded it on to Western Fire. It was not unusual for the Buschbach Agency to receive boat applications in the mail and they did not contact the Kamberos Agency. Had the

Buschbach Agency known of the August 19th accident when it received the application on August 21, it would not have accepted the risk.

The application, which read "no losses", was received at Western Fire on August 23, 1968. Also unaware of the loss, Western Fire proceeded to issue its insurance policy effective August 17, 1968, the date Kamberos had put on the application. Had Western Fire been aware that a loss had occurred on August 19, 1968, or that the application had not been received at the Buschbach Agency until August 21, 1968, it would have declined the application. It does not follow a practice of predating policies and assumed that the agency had issued a binder as of August 17, 1968.

On August 27, 1968, Kamberos received the policy and a bill and mailed them to Moss.

After his release from the hospital, Moss received the policy and bill from Kamberos and paid the premium. Thereafter, on September 27, 1968, Moss reported the accident to Kamberos, who then telephoned the Buschbach Agency and gave them their first notice of the August 19th loss. Buschbach immediately telephoned Western Fire and also forwarded to it a written notice of the loss.

After such notice, Western Fire, under a non-waiver agreement, investigated the facts and in January of 1969, wrote Moss declaring the policy void and returning the full amount of the premium. The present declaratory judgment followed.

### The Judgment Below

After a bench trial developing the facts as above stated, the trial court found that Kamberos was the agent of Moss and not of Western Fire; that Western Fire was not aware of the accident when it issued the policy; that, since Moss was unconscious from the time of his accident until after the policy had been issued and could not have informed the insurance company of the accident, he was not guilty of any fraud in not reporting it before the policy was issued; that Moss did pay the premium; and, "as to whether or not the failure of Mr. Kamberos, who was the agent of Moss * * * to inform them could be imputed to Moss", that

"I conclude that it cannot. He is a limited agent. His agency is that, simply, of getting them insurance and the fact that might have been negligence, whether it was knowingly or otherwise, that he failed to inform them cannot be imputed to the insured. He was an agent for that purpose, so that is absent."

The trial court therefore found the issues in favor of the defendants and against the plaintiff and entered judgment accordingly, thus sustaining the validity of the policy. This appeal followed.

■■ The general principles of law in this field are well established and are not seriously disputed. The trouble, as often, comes when refinements of the rules are applied to a specific set of facts.

In 9 Couch on Insurance, 2d in section 38:21, it is said:

"2. KNOWLEDGE OF SUBSEQUENT FACTS

"Sec. 38:21. *Knowledge after application but before issuance of policy.*

Known changes in conditions material to the risk which occur between the opening of negotiations for insurance and the issuance of the policy must be divulged. That is, there is a continuing duty on the part of an applicant to disclose newly discovered matters arising between the application for, and the confirmation of, the contract where they come to the applicant's knowledge and render his former answers no longer true." (Footnotes omitted.)

In 7 Couch on Insurance, 2d in section 35:98, it is said:

"Sec. 35:98. *Duty of subsequent disclosure.*

In consequence of the continuing character of the representation from the moment of its making to the time when the contract is binding, a duty rests upon the insured to reveal conflicting knowledge acquired by him between those two dates. So it is held that matters material to the risk, occurring and becoming known to insured between the time of making the application and the final completion of the contract and concerning which inquiries had been made, must be disclosed; and if, while the insurer is deliberating upon the application for insurance, the applicant discovers facts which make portions of his statements in the original application no longer true, the most elementary spirit of fair dealing calls for a full disclosure." (Footnote omitted.)

In 12 Appleman, Insurance Law and Practice, it is said, in section 7275:

"Sec. 7275. *Changes in Risk of Hazard.*

Under a good faith doctrine, the insured is under a duty to disclose to the insurer all facts affecting the risk which arise after application and before the contract has been consummated. * * * ."

In *Carroll v. Preferred Risk Ins. Co.* (1966), 34 Ill.2d 310, 215 N.E.2d 801, cited by plaintiff, our Supreme Court, at page 312, said:

"The relationship between an applicant and an insurer requires good faith on the part of the applicant because of the peculiar character of the insurance contract. The applicant has an obligation imposed by law to notify the insurer of any changed condition materially affecting the risk during the pendency of the

application for insurance. *Western and Southern Life Insurance Co. v. Tomasun,* 358 Ill. 496; *Stipcich v. Metropolitan Life Insurance Co.,* 277 U.S. 311, 72 L.Ed. 895."

In *Stipcich v. Metropolitan Life Insurance Co.* (1928), 277 U.S. 311, 72 L.Ed. 895, above cited by our Supreme Court, the United States Supreme Court had said, at pages 316-317, that:

"* * * [E]ven the most unsophisticated person must know that in answering the questionnaire and submitting it to the insurer he is furnishing the data on the basis of which the company will decide whether, by issuing a policy, it wishes to insure him. If, while the company deliberates, he discovers facts which make portions of his application no longer true, the most elementary spirit of fair dealing would seem to require him to make a full disclosure. If he fails to do so the company may, despite its acceptance of the application, decline to issue a policy, *Canning v. Farquhar,* 16 Q.B.D. 727; *McKenzie v. Northwestern Mutual Life Insurance Co.,* 26 Ga. App. 225, or if a policy has been issued, it has a valid defense to a suit upon it. *Equitable Life Assurance Society v. McElroy,* 83 Fed. 631, 636, 637. Compare *Traill v. Baring,* 4 DeG. J. & S. 318; *Allis-Chalmers Co. v. Fidelity & Deposit Co. of Maryland,* 114 L.T. 433; compare *Piedmont and Arlington Life Insurance Co. v. Ewing,* 92 U.S. 377."

See, also: *Palmer v. Bull Dog Auto Ins. Ass'n,* 294 Ill. 287, 128 N.E. 499; *Western & Southern Life Ins. Co. v. Tomasun,* 358 Ill. 496 at 503, 193 N.E. 451; *Hansen v. Continental Casualty Co.,* 156 Wash. 691, 287 P. 894; *Strangio v. Consolidated Indemnity Co.,* (9th Cir. 1933), 66 F.2d 330.

The defendants contend, however, that the above general rule requiring the disclosure of material changes during the pendency of the application does not apply in the case at bar for several reasons.

## I

Their first main contention, which has three subdivisions, is that there was no "fraud" or "concealment" of the disastrous collision of August 19, 1968, in the case at bar—

(a) Because Moss, being unconscious and in intensive care throughout the pendency of the application, could not himself have notified anyone, let alone the plaintiff or its agent, Buschbach, of the accident. (This is doubtless sound and is conceded but does not in itself eliminate fraud or concealment through Kamberos as his agent.)

(b) Because, although Moss' sister had reported the collision the next afternoon to Kamberos' secretary, who advised him,

shortly after he had mailed the application to Buschbach, that there had been an "occurrence", he did not notify either Buschbach or Western Fire "because he did not have all the pertinent facts at his disposal".

(c) Because, "even if Kamberos did know of the loss and willfully failed to communicate it to the plaintiff, this 'concealment' cannot be imputed to Moss" because Kamberos' "authority was exhausted once he had mailed the application for the insurance."

■■ Dealing first with (b) above, the contention that Kamberos did not have to advise Buschbach or Western Fire of the collision because all that his secretary had told him was that Moss' sister had advised her that there had been an "occurrence" falls of its own weight. He certainly should have inquired further or, at least passed what he knew on to Buschbach or Western Fire, which would have prevented the issuance of the policy. Even Kamberos admitted that had he heard of the "occurrence" before he mailed in the application, he would not have mailed it.

In *Orient Insurance Co. v. Peiser* (1900), 91 Ill.App. 278, Peiser requested his broker, Magill and Chamberlain, to secure fire insurance on certain personal property and Webster, the broker's chief clerk, personally filed an application for such insurance with Loeb & Sons, agents of the Orient Insurance Company, which accepted it. Between 4:00 P.M. and 4:20 P.M. that day a fire was discovered by which the property was destroyed. Webster testified that the application was accepted by Loeb at three o'clock but Loeb testified that it was not until five o'clock. Webster admitted that he knew at 4:45 P.M. that there was a fire in the neighborhood where the property was situated, but testified that he did not then know that the building in which the property was then stored was on fire.

The defendant tendered the following instruction which was refused:

"IV. The court instructs the jury that in applying to the agents of the defendant, for insurance upon the property of the plaintiff, the plaintiff, or his agent, was bound to the utmost good faith in said application and to disclose the true condition of the property at the time of the consummation of the contract; if the jury believe from the evidence that any contract of insurance ever was consummated between said plaintiff and said defendant, and if the jury further believe from the evidence that the plaintiff, or his agent, concealed from the defendant, or its agents, any fact material to the risk, or which if disclosed to the agents of the defendant would have caused them to refuse to issue said policy, then said plaintiff was not acting in the utmost good faith with the

agents of said defendant, and said policy is void, and the jury must find the issues for the defendant."

In reversing a judgment for the applicant and remanding the case for another trial with directions to give said instruction, the court, at pages 279, 281, said:

"If there was a fire raging in the neighborhood of the building where said property was at the time said application was made, that was a very material fact which, if known to said Loeb & Son at the time, would no doubt have caused them to decline to accept said application. If said property had been destroyed at the time said application was accepted, then such contract of insurance would not become effective. If said Webster knew of said fire at the time he made such application and suppressed the fact, the contract for insurance then made can not be enforced because of fraud. * * *

* * * If the application was not made until 5:00 P.M., and if said Webster knew of the fire at 4:45 P.M., then the rule stated in said instruction should have been before the jury, and should have guided them in arriving at their verdict. * * *."

The trial court did not adopt defendants' said contention, that Kamberos was somehow excused from notifying Buschbach or Western Fire of the "occurrence" reported to him "because he did not have all the pertinent facts at his disposal", and neither do we.

Passing then to contention (c) above, the defendants contend, in substance, that Kamberos' concealment of the fatal collision from Buschbach and Western Fire cannot be imputed to Moss because Kamberos' authority was exhausted once he had mailed the application. The trial court accepted this view, but we do not.

The only case cited in support of this contention is *Holbrook v. Institutional Insurance Co. of America* (7th Cir. 1966), 369 F.2d 236, which holds merely that where a broker has applied for and actually received delivery of an insurance policy ordered by his customer, he has no authority thereafter to cancel and surrender the policy because the insured was, for a time, behind in his payments to his broker.

■■ In Illinois, by statute, an insurance broker, such as Kamberos, is the agent of the applicant, not of the insurer, in the procurement of a policy of insurance (Ill. Rev. Stat. 1971, ch. 73, par. 1065.37). This has always been the Illinois rule. As our Supreme Court said in *France v. Citizens Casualty Co.*, 400 Ill. 55, 58, 79 N.E.2d 28,

"The rule is that an insurance broker, like any other broker, is the agent of the person who employs him. If an insurance broker is engaged to purchase insurance covering property of the one

employing him, he becomes the agent of the insured and not the insurer. (*Lycoming Fire Ins. Co. v. Rubin,* 79 Ill. 402.)"

In 12 Appleman, Insurance Law and Practice, sec. 7272, he says:

"An ordinary broker, employed to procure insurance, is the agent of the person employing him, and his concealment from the insurer of any material fact, whether wilful or not, is the concealment of his principal. An insurer, issuing a ship repairer's liability policy for a period antedating the issuance of the policies, has been held entitled to rely on the repairer and its broker, acting as the repairer's agent in applying for the issurance, to make known the facts of any accident preceding the issuance of, but covered by the policies and all other facts material to the risk. * * *."

In vol. 16, sec. 8722, he says:

"An agent soliciting policies of automobile insurance not directed to place the policy with any particular company is the agent of the insured, not the insurer, * * *." (Footnote omitted.)

and sec. 8728, that:

"* * * An insured, is bound by his broker's acts, even though fraudulent, and is charged with such broker's knowledge, and cannot challenge the validity of the contract which the broker makes for him. Consequently, a misrepresentation or breach of warranty by such broker is, in law, the act of the insured, and he is chargeable with the consequences thereof." (Footnotes omitted.)

In 7 Couch on Insurance, 2d, section 35:161, it is said:

"Sec. 35:161. *Broker as insured's agent.*

Where the broker is regarded as the agent of the insured, the latter is not excused from the effect of false statements made by the broker. * * *"

and, in 9 Couch on Insurance 2d, sec. 38:10, that:

"Sec. 38:10. *Concealment by broker.*

Where the broker is the agent of the insured to procure the policy, concealment by him of material facts voids the policy. * * *" (Footnote omitted.)

■■ We therefore hold that Kamberos' agency for Moss was for the ultimate procurement of an insurance policy and was not exhausted or terminated by the mere mailing of the application on the morning of August 20, 1968.

We therefore conclude that the defendants' first main contention—that there was no fraud or concealment of the disastrous collision of August 19, 1968—is without merit and that the policy issued by the company,

without any hint of said prior loss is void—unless the defendants' final main contention, hereinafter stated, changes all of this.

## II.

This brings us to the defendants' final contention—that the rules above enunciated do not apply to this case because here the application was for a predated policy and that this shifts the risk of material changes during the pendency of the application to the insurance company, which "need not issue the policy until it determines the facts on its own."

Various texts and cases are cited and quoted, but the law in Illinois, is otherwise and follows the general rules previously enunciated.

It is, as defendants contend, well established that parties to an insurance contract may validly agree on an effective date which is prior to the actual execution of the policy so as to cover a loss which may already have occurred, but there are somewhat varying statements as to the circumstances under which this may be accomplished.

Defendants quote the following from 9 Couch on Insurance, 2d, sec. 39:87, p. 493:

> "Although insurance policies ordinarily are prospective in operation only, they may be made retroactive as to the time of attachment so as to provide for indemnity for a loss which occurred prior to the date of the policies, for there is no principle of law which denies the parties the right to assume obligations antedating the date of the contract if the parties, for a valuable consideration, so elect, *provided, of course, there is no fraud or concealment or material misrepresentation.*" (Emphasis added.)

but this does not really change the general rules previously discussed.

They also cite and quote at length from *Burch v. Commonwealth County Mutual Insurance* (Tex. Sup., 1970), 450 S.W.2d 838, but there the Supreme Court of Texas (at p. 841) said:

> "Most courts that have considered the question hold that recovery may be had on a police antedated to include the time at which a loss occurred *provided neither the applicant nor the insurer knew of the loss when the contract was made.* Appleman, supra, § 2291; 43 Am. Jur. 2d Insurance § 328; Annotation, 132 A.L.R. 1325. See also United States v. Patryas, 303 U.S. 341, 58 S.Ct. 551, 82 L.Ed. 883. We approve and adopt this as a general rule, because in our opinion it is entirely sound as applied to the facts of this case. Aside from any question of protecting insurance companies against possible fraud on the part of their customers or agents, we can think of no reason for holding that the parties may

not effectively contract for the insurer to assume the risk of a loss that may or may not have occurred when the contract is made. If that is their intention, they are not mistaken in any material respect even though the insured property has, in fact, been damaged or destroyed. *When neither of them knows of the loss,* there is no basis for charging the insured with fraud and the company is not in the position of promising unconditionally to pay a substantial amount of money in exchange for a much smaller sum." (Emphasis added.)

This is reflected in the more recent case of *Robbins v. Maryland American General Ins. Co.* (Tex. Civ. App.), 472 S.W.2d 203, where the same court, at page 208, says:

"It is now settled law in this State that a recovery may be had on a policy of insurance against a loss occurring prior to the issuance of the policy provided that neither the insured nor the insurer knew of the loss when the contract was made. Burch v. Commonwealth County Mutual Inc. Co., 450 S.W.2d 838 (Tex. Sup. 1970). * * *"

These cases do not change the general rules discussed above.

In their argument the defendants finally contend that:

"The mere fact that the company receives an antedated application is sufficient to place it on notice that it may be issuing a policy to insure a loss that has already occurred. If it fails to make an appropriate investigation, then it should be chargeable with the facts it *could have obtained.* This is consistent with the principle that one who has failed to exercise ordinary care to discover the truth cannot claim fraud. * * *"

and that:

"In summary, and as so eloquently stated by Justice Schaefer, plaintiff's contention 'overlooks the crucial difference between the duty to notify of changed conditions under an ordinary application and the duty that exists when predated insurance is involved'."

Defendants' above quotation from Justice Schaefer's comments in *Carroll v. Preferred Risk* (1966), 34 Ill.2d 310, 215 N.E.2d 801, ignores the fact that said language is taken from his dissent and therefore demonstrates precisely what is *not* the law in Illinois.

In said case, the applicant, at 5:00 P.M. on June 22, 1962, mailed to the insurance company an application for an automobile liability insurance policy to be effective at 12:01 A.M. that same day. At 10:00 P.M. that night, June 22, 1962, he was involved in an automobile accident resulting in the death of plaintiff's intestate. The application was received on June

25, 1962, and the policy was issued, effective at 12:01 A.M. on June 22, 1962, as requested. No disclosure was made of the accident until after the issuance of the policy.

In holding that the policy was not effective and that the applicant was therefore uninsured, the Supreme Court through Mr. Justice Solfisburg, at pages 312-315, said:

"*Palmer v. Bull Dog Auto Insurance Ass'n*, 294 Ill. 287, involved a similar problem. In *Bull Dog* the plaintiff applied for an automobile theft policy and sent the application and premium to the insurer. The loss occurred, as in the case at bar, after the application was mailed, but prior to acceptance by the insurer. The court held that the loss was not covered by the policy, stating at pages 291-292:

'Where a loss occurring before the risk attaches is known only to the applicant and he obtains a policy without disclosing the fact of loss the policy is void, even though the contract be given a date prior to the loss." (I Joyce on Insurance, 2d ed., sec. 107.)
* * *

While Mimms executed the application for insurance on June 22, the day of the fatal accident, the application was not received by Adams until June 25. Pursuant to ordinary contract principles, the application did not become an offer until it was communicated to the offeree, Adams, more than two days after the undisclosed fatal accident. It is essential to the existence of an offer that the proposal by the offerer be made known to the offeree. (Restatement of Contracts, § 23; 17 C.J.S. Contracts, sec. 38.) On the application Mimms answered in the negative to the question, 'Has the applicant or any other person been involved in an automobile accident while operating any private passenger type automobile resulting in any damage to any property, including his own, or in bodily injury or death, during the preceding 36 months?' We feel that the answer to this particular question must be considered a continuing representation that there has been no intervening material change in the risk from the date of the application to the time the policy is issued. *Strangio v. Consolidated Indemnity & Ins. Co.* (9th cir.) 66 F.2d 330.
* * *

In the present case Iberra was the agent of Mimms and had neither apparent nor actual authority to bind the risk. The material increase in the risk due to the fatal collision was known to Mimms but unknown to the insurer prior to the issuance of the policy. We, therefore, conclude that the issuance of the policy

without disclosure of the increased risk was not effective and Mimms was an uninsured motorist at the time of the collision with plaintiff's intestate."

This is in line with the law generally.

In 9 Couch on Insurance, 2d, it is said, in section 38:23:

"Sec. 38:23. *Occurrence of accident.*

Where the applicant for an automobile liability policy, to his knowledge, had been involved in an accident prior to the issue of the policy but subsequent to his application, it was his duty to disclose such accident to the insurer even though the policy according to its terms was to take effect as of a day prior to the accident. * * *.

A workmen's compensation policy will be avoided ab initio where the insured concealed the fact that an accident had occurred shortly before the application, despite the fact that the policy was antedated and covered the period of the accident. (Footnotes omitted.)

In 12 Appleman, Insurance Law and Practice, in section 7272, this author says:

"* * * An insurer, issuing a ship repairer's liability policy for a period antedating the issuance of the policies, has been held entitled to rely on the repairer and its broker, acting as the repairer's agent in applying for the insurance, to make known the facts of any accident preceding the issuance of, but covered by the policies and all other facts material to the risk. * * *"

In 132 A.L.R. 1325 in an annotation entitled "Antedating policy of insurance as affecting liability for loss that had already occurred", it is said:

"It is generally held that where at the time of an application for insurance there has been a loss but neither the applicant nor the insurer knew of this fact a recovery may be had on a policy subsequently issued, which was antedated so as to include the time at which the loss occurred * * *.

But where one applies for a policy of insurance knowing that a loss has already occurred and conceals this fact and procures a policy to be antedated so as to cover the period when the loss occurred, the policy is void because of such fraud or concealment and no recovery can be had thereon. Massachusetts Bonding & Ins. Co. v. Hoxie (1937) 129 Fla 332, 176 So 480; Merchants' Ins. Co. v. Paige (1871) 60 Ill 448 (by implication); MATLOCK v. HOLLIS (Kan) (reported herewith) ante, 1316; Wales v. New York Bowery R. Ins. Co. (1887) 37 Minn 106, 33 NW 322; Nippolt v. Firemen's Ins. Co. (1894) 57 Minn 275, 59 NW 191; Continental

Casualty Co. v. Lanzisero (1935) 119 NJ Eq 166, 181 A 170; Henshaw v. Insurance Co. of N.Y. (1901) 36 Misc 405, 73 NYS 1." In *Hansen v. Continental Casualty Co.*, 156 Wash. 691, 287 P. 894, in reversing a judgment on an accident policy, the Supreme Court of Washington, at pages 895, 896, said:

"Appellant's contention, which we think must be sustained, is that respondent's agent McNally, in procuring the predating of this policy so that on its face it covered a date on which an accident had already occurred, known to respondent's agent, but entirely unknown to the appellant and its agent, was guilty of conduct that voided the policy as to any liability for such injuries.

\* \* \*

The rule that there is no liability on a policy upon an application of the kind in the present case, for an injury occurring between the date of the application to which the policy was predated and the date on which the policy was actually issued, where such injuries were unknown to the insurer at the time of issuing and delivering the policy, goes hand in hand with another well-settled rule that changes in condition material to the risk which occur between the opening of negotiations for insurance and the issuance of the policy must be disclosed, as an elementary spirit of fair dealing \* \* \*."

We therefore hold that the defendant's final contention—that the general rules heretofore enunciated do not apply to this case because here the application was for a predated policy and that this shifts the risk of material changes during the pendency of the application to the insurance company—is not the law, certainly in Illinois and probably generally.

## III.

We therefore conclude that Moss' insurance broker, Kamberos, was his agent, not only for the mailing of the application, but also for the ultimate procurement of a liability policy on his boat and motor; that shortly after mailing said application and days before it was received or processed Kamberos learned from his secretary that there had been an "occurrence", which he did not investigate or report to Western Fire or its agent Buschbach; that during the pendency of that application Kamberos, as Moss' agent for the procurement of the policy, was under a continuing duty to advise Western Fire or its agent Buschbach that there had been an "occurrence" (actually a fatal accident), which certainly was a change materially affecting the risk, and that his lack of knowledge

of the details of said "occurrence" does not excuse the failure which constitutes, in law, a concealment or a fraud upon the insurance company, which had no hint of the fatal collision when it issued the policy; that this concealment or fraud vitiates the policy and bars any recovery as against the insurance company; and that, certainly, under Illinois law and probably generally, this is true, even though the policy was predated to be effective before the policy was actually issued.

As a result, the judgment is reversed, and the case is remanded for further proceedings not inconsistent with this opinion.

Reversed and remanded with directions.

BURKE, P. J., and GOLDBERG, J., concur.