GULF ATLANTIC LIFE INSURANCE COMPANY, Plaintiff-Appellee, *v.* MERCHANTS & MANUFACTURERS STATE BANK, Defendant-Appellant.

(No. 58538;

First District (5th Division)—February 15, 1974.

Collins & Amos, of Chicago (Alan O. Amos, of counsel), for appellant.

Epton, McCarthy and Druth, Ltd., of Chicago (Bernard E. Epton, Donald Segel, and Lawrence A. Berman, of counsel), for appellee.

Mr. JUSTICE DRUCKER delivered the opinion of the court:

This is a suit for the recovery of $7500 paid by plaintiff to defendant, Merchants & Manufacturers State Bank, on a group credit life insurance policy issued by plaintiff insuring the lives of the debtors of the bank and arranged for by Dearborn Insurance Brokers, Inc., a co-defendant below. The court, sitting without a jury, found for plaintiff against both defendants. Only Merchants & Manufacturers State Bank (hereinafter defendant) appeals.

On appeal it is contended that (1) plaintiff undertook to insure all debtors without regard to their state of health and (2) defendant did have an affirmative burden to volunteer facts dealing with the condition of its debtors' health.

Plaintiff is an insurance company which writes group credit life insurance policies. Under the terms of such a policy plaintiff agrees to insure the lives of persons included in enumerated classes of debtors of a bank, the bank being the beneficiary. On June 10, 1969, defendant applied for such coverage. The application stated that under the policy, coverage would be limited to:

"\* \* \* persons ages 18 through 65 inclusive at the time of becoming indebted to the creditor, who are liable, directly or indirectly, to pay or repay sums of money to the creditor over a period not to exceed 60 months and agree to pay the required premium contribution to the creditor, *and who represent themselves to be in good health* and gainfully employed shall be eligible for insurance hereunder." (Emphasis added.)

The application was apparently signed by Leo Waxman as president of the defendant bank. He denied it was his signature but testified that Irving Karlin was "empowered to do whatever was necessary to get the insurance." Karlin was president of Dearborn Insurance Brokers which had been employed by plaintiff as its agent for the collection of premiums and the issuance of certificates of insurance under the group credit policy issued to defendant. In addition, Karlin attended the board meetings of defendant, advising it on matters pertaining to insurance. He had been a shareholder of defendant until January 1968. On March 22, 1970, defendant made an unsecured loan to Karlin in the amount of $24,025.27. A credit life certificate was issued covering Karlin's loan to the extent of $7500, the maximum amount available to a man his age. On May 7, 1970, Karlin suffered a cardiac arrest and died. Defendant sought recovery under the policy and, thereafter, payment of $7500 was made by plaintiff. On December 11, 1970, plaintiff, alleging that the credit life certificate was issued because of misrepresentations made by defendant and Dearborn Insurance Brokers concerning Karlin's health, brought this action to recover the $7500.

Edward Edelstein, the general agent of plaintiff, testified that he dealt with Karlin in arranging the group credit life policy covering defendant's debtors. In setting up this policy an agency contract was entered into between plaintiff and Dearborn Insurance Brokers.\* Under the policy, defendant had authority to issue certificates evidencing the inclusion of individuals within the group insured by plaintiff. These certificates were submitted to Dearborn Insurance Brokers which forwarded them to Edelstein. There was no requirement that debtors of defendant take a physical examination before the issuance of the certificates. During the autumn of 1969 Edelstein observed that Karlin "looked sick" and that he had lost a great deal of weight, perhaps 35 pounds. Edelstein stated that a heart condition was a "physical impairment which would cause the rejection of an application for group life insurance." He was not aware that Karlin was a debtor of the bank.

---

\* This contract states, in part, that the "[a]gent agrees not to issue certificates to individuals known by him to be mentally or physically impaired."

Waxman ** testified that he had a friendly relationship with Karlin, seeing him approximately a dozen times a month. He was aware that Karlin had been hospitalized several times in the years immediately preceding his death and had visited him in the hospital in March 1970. He believed it to be "common knowledge" that Karlin had a heart problem. At its meetings defendant's board of directors would often discuss Karlin's health. He knew that Karlin frequently borrowed money from defendant and assumed that the rules applying to unsecured loans applied to those made to Karlin.

Dr. Marvin Rosenberg, a cardiologist, testified in an evidentiary deposition submitted to the court below that Karlin had been his patient from August 1968 until his death. Karlin's appearance was that of a man who was chronically ill. This would be obvious even to a layman. Karlin showed evidence of severe weight loss (Rosenberg's records indicated that his weight had dropped from 210 pounds to 155 pounds) and there was a marked swelling of his abdomen. Karlin's prognosis was so poor that he was a candidate for "heart transplantation." During 1970 Karlin was hospitalized on three occasions: from January 11 through January 30, from March 6 through March 27, and from May 2 until his death. Heart disease was the cause of all three hospitalizations.

OPINION

Defendant first contends that plaintiff undertook to insure all debtors without regard to their state of health. A reading of the application for insurance reveals this contention to be erroneous. This application stated that coverage would be extended only to those debtors who represented themselves to be in good health. By its terms the master policy issued by plaintiff included this document. Clearly, then, there was a good health limitation on the scope of coverage offered by plaintiff.

■■ While as its second contention defendant argues that it did not have an affirmative burden to volunteer facts dealing with the state of a debtor's health, it cannot deny that it had an obligation to act in good faith in its dealings with its insurer. *Apolskis v. Concord Life Insurance Co.*, 445 F.2d 31 (7th Cir.); *Carroll v. Preferred Risk Insurance Co.*, 34 Ill.2d 310, 215 N.E.2d 801; *Western and Southern Life Insurance Co. v. Tomasun*, 358 Ill. 496, 193 N.E. 451; *Tesluk v. Metropolitan Life Insurance Co.*, 130 Ill.App.2d 290, 264 N.E.2d 566.

■■ Examining the record in light of this fundamental principle, we note that the policy here in question was apparently "self administrative" in nature. (See generally *Crawford v. Equitable Life Assurance Society*

---

** Upon the death of Karlin, Waxman became president of Dearborn Insurance Brokers. Even before his assumption of that office Waxman had an "indirect" financial interest in Dearborn.

*of the United States,* 56 Ill.2d 41, 305 N.E.2d 144.) It was for defendant to determine which of its debtors were members of that class of persons whom plaintiff undertook to insure. Specifically, defendant was obligated to submit credit life certificates only on those debtors who represented themselves to be in good health. In the case at bar it was "common knowledge" that Karlin suffered from heart disease. Due to the extreme fluctuations in his weight, it was clear to his business associates that Karlin was a very sick man. This was discussed at the board meetings of defendant. Waxman, president and chairman of the board of defendant, in particular, knew of Karlin's heart condition and of his repeated hospitalizations. Waxman, an attorney with some experience in dealing with insurance, testified that the master policy was probably approved by the board of directors over which he presided. He knew that bank rules required credit life coverage on all unsecured loans and that defendant repeatedly made such loans to Karlin. Moreover, on March 22, 1970, the date on which defendant made its last loan to Karlin and submitted a credit life certificate signifying that he had represented himself to be in good health, Karlin was, in fact, a patient at the Presbyterian-St. Lukes Hospital confined there due to congestive heart failure. Waxman visited him during this period of convalescence. Even the most unsophisticated person is subject to "the spirit of fair dealing" in his duty to disclose to his insurer matters which affect the insurer's risk. (*Stipcich v. Metropolitan Life Insurance Co.,* 277 U.S. 311.) Here defendant, through the acts of its officers and advisers, all experienced businessmen, issued certificates of credit life insurance covering a man who was critically ill. We believe that in so ignoring the provisions found in the master policy, defendant failed to meet its obligation to act in good faith in its dealings with plaintiff. We therefore affirm the judgment entered below.

Affirmed.

SULLIVAN, P. J., and LORENZ, J., concur.